648 So.2d 359 (1994)
Charles Harold ALLEN
v.
Mildred Joe Neal ALLEN.
No. 94-C-1090.
Supreme Court of Louisiana.
December 12, 1994.
Rehearing Denied January 26, 1995.
Tommy J. Adkins, Barham, Adkins & Tatum, for applicant.
Bobby L. Culpepper, for respondent.
*360 WATSON, Justice.[1]
The question presented is the type of fault which will bar a needy spouse from permanent alimony. LSA-C.C. art. 112.

FACTS
The Allens were married in Lincoln Parish (Ruston) on December 6, 1986, and made their home in Jackson Parish (Jonesboro). On October 28, 1991, Charles Harold Allen left the matrimonial domicile and was subsequently granted a no-fault divorce under the provisions of LSA-C.C. art. 102. It was stipulated that he could pay reasonable alimony. The trial court found Mildred Allen at fault and denied her permanent alimony.
Prior to their marriage, Mildred Joe Neal was a healthy 42-year-old woman who ran two to six miles every day. As a single parent of three children, she had suffered financially and had filed for bankruptcy in 1977. Charles Harold Allen knew of his wife's many debts when they married. He stated that she "had notes scattered all over." (Tr. 479.)
At the time of their marriage, both parties had grown children: hers were 20, 21 and 26. The couple dated for eighteen months in Ruston and had a harmonious relationship during their first married year.
There was a strong economic disparity between the parties. Charles Harold Allen, a bank president 20 years his wife's senior, had a substantial annual income, ranging from a gross income of $288,149 in 1986 to over $500,000 in 1991. Mildred Allen was employed at the Security First National Bank in Ruston: in 1987, she earned $16,876.76.
In August of 1987, Mildred Allen had gallbladder surgery. She was later treated for bladder problems, a breast lump, severe reflux esophagitis and irritable bowel syndrome, which causes periodic loss of body function control. Her testimony was that her marriage deteriorated after her first surgery.
At the time of the marriage, Mildred Allen weighed 126 pounds and wore a size 8. She quit her Ruston job because of health problems in October of 1988. Subsequently, she did volunteer work, much of which she performed at home. By December of 1990, she weighed approximately 100 pounds and was wearing children's sizes.
Mildred Allen's treating doctor for the irritable bowel syndrome, Dr. Chris Rheams, testified in deposition (D-14). Irritable bowel syndrome is a functional illness of the bowel. Hers was a severe disease, probably the worst he has seen. The symptoms include cramps, pain, diarrhea and chronic fatigue. While she has days when she can function, her condition is too unpredictable to make her employable. She also suffers from tachycardia and carpal tunnel syndrome. In his opinion, she is well motivated and not a malingerer. Her irritable bowel syndrome is complicated by emotional stress.
Dr. Rheams advised the Social Security Administration that Mildred Allen was totally disabled but apparently his recommendation was not accepted by that agency. Her claim for Social Security disability benefits was denied, and the denial has been appealed.
Mildred Allen's daughter, Tierney Copeland Robertson, was a student at USL when her mother remarried. While she was in school, Tierney also held a job. Charles Harold Allen's tax returns showed her as a dependent. She observed that the marital relationship changed when her mother became ill.
When Tierney married in June of 1990, her stepfather said he would be glad to help with the wedding. However, he subsequently changed his mind, objected to the $8,000 in wedding charges and refused her attempt to repay part of the cost. Charles Harold Allen closely supervised his wife's expenditures: the $8,000 slipped in on a Visa card his wife obtained without his consent. (It was promptly cancelled.)
As her health deteriorated, Mildred Allen became convinced that her husband was involved in extra-marital affairs. She taped telephone calls which indicated a sexual interest *361 in two women. The tape recording was introduced into evidence as D-9.
When Charles Harold Allen was deposed, he refused to answer questions as to extramarital affairs with the two women and a rule to compel answers was filed. In answer to the rule to compel, and again at trial, he testified that he did not remember whether he had extra-marital affairs with the two women or anyone else during his marriage to Mildred Allen.
Charles Harold Allen kept detailed financial records. The money spent for and on behalf of his wife is reflected in those records. While he was sometimes generous, he kept close control over her expenditures. In 1987, the money given to Mildred Allen and for her accounts totaled $35,974.65, itemized as follows:

CASH TO MILDRED 1987 $18,232.13
CHECK TO KAY TERRY
FOR MILDRED 600.00
PAID NOTES TO SECURITY
FIRST NAT'L FOR MILDRED
ON CAR & 2ND
MTG. ON HOME 17,142.52
 __________
 TOTAL $35,974.65

In 1988, the expenditures were reduced to $14,014.98 and $845.04 of that sum was for medical expenses. In 1989, the sums were larger, totaling $22,934.18, including $726.26 in medical expenses and substantial payments for Tierney's expenses at USL. Excluding the daughter's expenses and medical expenses, Charles Harold Allen spent a little over $19,000 on his wife in 1989. During the following year, 1990, he spent $1,330 for their joint counseling, gave her $17,500 in living expenses and paid an additional $10,000 for her children and medical expenses.
In 1991, the year in which Charles Harold Allen left his wife, he gave her checks totaling $13,550 and paid accounts of $5,323.14. Many of the accounts were for medical expenses, which totaled $2,804.66.
Mildred Allen was discharged in bankruptcy on June 9, 1992: the debts which were discharged totaled $34,348.
The trial court found that Mildred Allen was not free from fault because of the following:
1. Having conflicts with Plaintiff because Plaintiff made donations to non-profit or charitable groups.
2. Making thousands of dollars of unauthorized credit card charges against Plaintiff's account.
3. Criticizing Plaintiff to Plaintiff's children.
4. Mishandling financial affairs, leading to Defendant's personal bankruptcy.
5. Complaining that Plaintiff did not do enough financially for Defendant's children.
6. Complaining that Plaintiff bought Defendant a "factory" car rather than a new car.
7. Categorizing Plaintiff's hometown and home area, to Plaintiff and others, as "the hell hold of America."
8. Arguing "back and forth" with Plaintiff, for a long period of time.
The trial court decided that these deficiencies added up to legal fault.
Among the charitable donations Mildred Allen criticized (Item 1) was a 1986 donation of $55,620 to the Jonesboro United Methodist Church. She testified that she was hurt about having no knowledge of the gift until told by other people.
The court of appeal focused on Mildred Allen's financial situation in determining that Mildred Allen's fault contributed to the dissolution of the marriage. The court of appeal affirmed the trial court. Allen v. Allen, 642 So.2d 202 (La.App. 2d Cir.1993). A writ was granted to review the judgment of the court of appeal. 94-1090 (La. 7/1/94), 641 So.2d 533.

LAW
Marriage is a civil obligation, a contract between two parties. LSA-C.C. art. 86. The mutual duties of married persons are fidelity, support and assistance. LSA-C.C. art. 98.
Although no-fault divorce is now available, freedom from fault is still necessary for permanent alimony. LSA-C.C. art. 112. "The elimination of fault as a prerequisite for divorce left open the question of the financial *362 allocations to be made upon divorce." 65 Tul.L.Rev. 953 at 977.
Some states preclude consideration of marital misconduct in post-divorce financial allocations. This accords with the policy basis for permanent alimony: preventing divorced spouses from becoming state wards.[2]
LSA-C.C. art. 112 A(1) provides, in pertinent part:
When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, permanent periodic alimony which shall not exceed one-third of his or her income.
Prior to the repeal of Civil Code article 138, fault was determined by analogy to the grounds for separation in that article, which included adultery, habitual intemperance, excesses, cruel treatment or outrages, making living together insupportable, and abandonment. With the repeal of LSA-C.C. art. 138, the only statutory fault measure is the grounds for divorce in LSA-C.C. art. 103, i.e., adultery or a felony sentence punishable by death or hard labor.[3]
Since the statutory law does not specify fault which would deny permanent alimony, legal fault must be determined according to the prior jurisprudential criteria. See Lagars v. Lagars, 491 So.2d 5 (La.1986), for an analysis of those criteria. The jurisprudence specifies the conduct which may be considered legal fault.
An association which implies adultery naturally brings on marital discord. A spouse who perceives infidelity may become quarrelsome or hostile. Such a reasonable reaction does not constitute legal fault. The suspicion of adultery causes the break-up and not the reaction. A spouse who reacts should not be precluded from receiving alimony solely because of his or her response. Abele v. Barker, 200 La. 125, 7 So.2d 684 (1942); Brewer v. Brewer, 573 So.2d 467 (La.1991).
Petty quarrels between husband and wife do not rise to the level of legal fault. Gormley v. Gormley, 161 La. 121, 108 So. 307 (1926). A spouse in poor health is entitled to special consideration. McKoin v. McKoin, 168 La. 32, 121 So. 182 (1929). Legal fault consists of serious misconduct, which is a cause of the marriage's dissolution. Vicknair v. Vicknair, 237 La. 1032, 112 So.2d 702 (1959); Pearce v. Pearce, 348 So.2d 75 (La. 1977).
Alimony after divorce is in the nature of a pension, a gratuity which provides a divorced spouse with sufficient means for maintenance. Jones v. Jones, 232 La. 102, 93 So.2d 917 (1957); Reich v. Grieff, 214 La. 673, 38 So.2d 381 (1949); Keeney v. Keeney, 211 La. 585, 30 So.2d 549 (1947); Slagle v. Slagle, 205 La. 694, 17 So.2d 923 (1944).
The factors to be considered in determining the entitlement and amount of alimony after divorce are: (a) the income, means and assets of the spouses; (b) the liquidity of their assets; (c) the financial obligations of the spouses, including their earning capacity; (d) custody (not applicable here); (e) the time necessary for the recipient to acquire appropriate education, training or employment; (f) the health and age of the parties; and (g) any other relevant circumstances. LSA-C.C. art. 112 A(2).

CONCLUSION
The court of appeal concluded that there were three fault factors on the part of Mildred Allen which precluded her from permanent alimony.
First, her monetary irresponsibility and bankruptcy were described as a source of embarrassment. However, her monetary problems preceded the marriage and were known to Charles Harold Allen when he married her. Her bankruptcy occurred after he abandoned her. Her expenditures during *363 the marriage do not constitute profligacy for the wife of a man with an annual income from $288,000 to $500,000. The evidence does not support this fault factor.
The court of appeal's second finding of fault included the expenditure of approximately $8,000 for Tierney's wedding. There was obviously a misunderstanding about this item since Tierney understood that her stepfather intended to help with the wedding ($8,000 was not the total cost). Charles Harold Allen's total expenditures for Mildred Allen and her family totaled $27,656.01 that year. This included medical expenses of $1,304, and the $8,000 expended on Tierney's wedding. A disagreement over a stepdaughter's wedding expenses does not rise to the level of legal fault.
The court of appeal found a third fault factor: Mildred Allen criticized Charles Harold Allen's charitable donations, particularly $55,620 to the Jonesboro United Methodist Church in 1986. Mildred Allen said she only objected to not knowing about the gift and hearing about it from third persons. Regardless, a spouse's difference of opinion does not constitute legal fault.
The trial court decided that Mildred Allen's complaints and criticisms constituted legal fault. Isolated instances of arguing, complaining and criticizing are an unfortunate concomitant of almost all marriages, and they do not generally arise in a vacuum. Brewer v. Brewer decided that a wife's nagging does not constitute legal fault. Differences of opinion arise in most marriages, and these disagreements cannot be characterized as legal fault.
Although he complained bitterly at trial about her lack of financial responsibility, Charles Harold Allen did not allow his wife any financial independence during their five years of marriage. The court of appeal's alimony pendente lite award of $3,000 per month, plus use of the family home and an automobile, was more than he spent on her and her children during the marriage, even during their honeymoon year.
Charles Harold Allen was undoubtedly disappointed in his marriage. He undertook that contract with a relatively young, healthy, working woman. She soon became ill and incapable of holding a job. The medical evidence of her disability was unrebutted. Unhappy with his bargain, Charles Harold Allen exercised his right to leave his wife and obtain a divorce.
The problem is the future support of his former wife, who is now eight years older, sick and disabled. She has no assets and no earning capacity. There is no evidence that she breached her marital contract in any significant way. Her former husband stipulated that he is able to provide maintenance for his former wife.
The trial court was clearly wrong in finding that Mildred Allen's remarks, criticisms and complaints constituted legal fault.
[T]he trial court apparently equated fault in a generic sense, i.e., imperfection, with legal fault in finding [the wife] at fault in the separation. In this imperfect world, all spouses have faults and a spouse need not be perfect to be free from legal fault. Brewer v. Brewer, 573 So.2d at 469.
The trial court and court of appeal erred as a matter of law in finding Mildred Allen guilty of legal fault which caused the dissolution of the marriage. As in most sundered marriages, the parties became dissatisfied. Charles Harold Allen was optimistic in marrying an indebted, bankrupt woman and expecting her to prove financially stable. She was certainly disappointed with his flirtations and his failure to deny adultery. "To be legally at fault, a spouse must be guilty of cruel treatment or excesses which compel a separation because the marriage is insupportable. Pearce v. Pearce, 348 So.2d 75 (La.1977); Vicknair v. Vicknair, 237 La. 1032, 112 So.2d 702 (1959)." Brewer v. Brewer, 573 So.2d at 469.
For the foregoing reasons, the judgment of the court of appeal is reversed. The case is remanded to the court of appeal, which is instructed to award appropriate permanent alimony to Mildred Allen.
REVERSED AND REMANDED.
DENNIS, J., concurs. Although I am persuaded by the legal analysis of the majority and concurring opinions, I am *364 uncomfortable with their treatment of the trial court's findings of fact, and application of legal principles to those facts.
KIMBALL, J., concurs and assigns reasons.
KIMBALL, Justice, concurring in result.
This case presents the issue of what type of fault will preclude a needy spouse from receiving permanent alimony. While I subscribe to the result reached by the majority in this case, I write separately in order to clarify my position and to provide further analysis of the legal precepts which I believe are controlling in this case.
As the majority correctly observes, the repeal of La.Civ.Code art. 138 and the elimination of its fault grounds as a prerequisite for obtaining a judgment of separation from bed and board under the former divorce law created uncertainty as to what type of fault would serve to prohibit a spouse from recovering post divorce or permanent alimony. See 4 Katherine Shaw Spaht, Louisiana Practice Series [Family Law In Louisiana] 337 (1994). This confusion is due in large measure to the fact that the only remaining statutory fault grounds are found in La.Civ. Code Art. 103. A spouse is guilty of fault under that article if: (1) he or she commits adultery, or (2) after committing a felony, he or she is sentenced to death or imprisonment at hard labor.
Although the legislature has not specifically addressed the issue of what type of fault will bar a needy spouse from receiving permanent alimony, this issue can be resolved by resort to jurisprudential precepts because when no rule for a particular situation can be derived from legislation or custom, the court is bound to proceed according to equity, and to decide equitably, resort is made to justice, reason, or prevailing usages.[1] Past decisions of the Louisiana Supreme Court constitute received usages. Keller v. Haas, 209 La. 343, 24 So.2d 610, 614 (1946). And, these past decisions have become a part of the law to which courts must resort when deciding similar issues. Id at 614.
La.Civ.Code art. 160 which governed permanent alimony or alimony after divorce was redesignated as La.Civ.Code art. 112 by Acts 1990, No. 1008 § 8 and Acts 1990, No. 1009 § 10. Article 112 A(1) provides that a spouse who "has not been at fault" and who lacks sufficient means of support may be awarded permanent alimony not exceeding one-third of the payor spouse's income. Prior to former article 160's redesignation in 1990, this Court interpreted that article on a number of occasions. See generally Lagars v. Lagars, 491 So.2d 5 (La.1986); Adams v. Adams, 389 So.2d 381 (La.1980); Pearce v. Pearce, 348 So.2d 75 (La.1977); Vicknair v. Vicknair, 237 La. 1032, 112 So.2d 702 (1959); Kendrick v. Kendrick, 236 La. 34, 106 So.2d 707 (1958); Davieson v. Trapp, 223 La. 776, 66 So.2d 804 (1953); Breffeilh v. Breffeilh, 221 La. 843, 60 So.2d 457 (1952).
In Pearce v. Pearce, supra, this court faced the issue of whether a wife had been guilty of fault as contemplated by former La.Civ.Code art. 160. Interpreting that article the court noted:
We have held that, under this statute respecting an award of alimony to a wife without "fault," the word "fault" contemplates conduct or substantial acts of commission or omission by the wife violative of her marital duties and responsibilities. A wife is not deprived of alimony after divorce simply because she was not totally blameless in the marital discord. Vicknair v. Vicknair, 237 La. 1032, 112 So.2d 702 (1959); Davieson v. Trapp, 223 La. 776, 66 So.2d 804 (1953); Breffeilh v. Breffeilh, 221 La. 843, 60 So.2d 457 (1952); Adler v. Adler, 239 So.2d 494 (La.App. 4th Cir. 1970). To constitute fault, a wife's misconduct must not only be of a serious nature but must also be an independent contributory or proximate cause of the separation. Kendrick v. Kendrick, 236 La. 34, 106 So.2d 707 (1958).
See Pearce, 348 So.2d at 77. Three years later, in Adams v. Adams, supra, this court was again called upon to decide whether a spouse was guilty of fault under former La. Civ.Code art. 160. In Adams, this Court decided that "fault" for purposes of permanent *365 alimony preclusion was synonymous with the fault grounds for separation and divorce under the former divorce law. Justice Blanche, writing for the majority in Adams, quoted the passage from Pearce, supra, and added the following statement:
Although not specifically mentioning C.C. art. 138(1)-(8), or C.C. art. 139 by name, this language [in Pearce] clearly indicates that only such conduct as will entitle one spouse to a separation or divorce under these articles is sufficient to deprive the other spouse of alimony after a final divorce.
See Adams, 389 So.2d at 383. Thus, it is clear that prior to the repeal of article 138, this court created any provision affecting a jurisprudential definition of "fault" for purposes of determining whether a spouse in need of support would be precluded from receiving post divorce alimony. This judicially created definition was synonymous with the fault grounds for separation and divorce. See also Lagars v. Lagars, 491 So.2d 5 (La.1986) and Brewer v. Brewer, 573 So.2d 467 (La.1991). In 1990, when the legislature abrogated the fault grounds in former La.Civ.Code art. 138, it allowed a continued absence of legislation in the area of post divorce alimony by not specifically defining what type of "fault" would deprive a needy spouse of alimony.
Although a definition of "fault" for purposes of post divorce alimony cannot be found by resort to legislation, as indicated supra, the issue may be resolved through the application of well accepted principles of Civilian methodology. Courts must resort to prevailing usages when no rule for a particular situation can be derived from legislation. See La.Civ.Code art. 4. Moreover, past decisions of the Louisiana Supreme court constitute prevailing usages. Keller v. Haas, 209 La. 343, 24 So.2d 610, 614 (1946). Therefore, to correctly analyze the legal issue in this case, it is necessary to resort to this court's holdings in Pearce, Adams, Lagars, and other cases where this court addressed the issue of what constitutes fault for purposes of post divorce alimony. After doing so, it is clear to me that the fault grounds for post divorce alimony are synonymous with the fault grounds from the former law of separation and divorce because the authorities establishing the judicially created definition of fault for purposes of post divorce alimony have not been over-ruled.
Having clarified my position on the issue of what constitutes fault for purposes of post divorce alimony, I believe the majority's analysis and conclusion with respect to the issue of whether Mrs. Allen was guilty of fault is correct. Accordingly, I concur in the majority's result.
NOTES
[1] Judge Felicia Toney Williams, Court of Appeal, Second Circuit, participating as Associate Justice Pro Tempore, effective September 1, 1994, recused and not on panel. Rule IV, Part 2, § 3.
[2] Bills to eliminate fault as an alimony barrier have failed in the Louisiana legislature. See, for example, La.H.B. 901, 5th Reg.Sess. (1979), and La.S.B. 268 & 682, 7th Reg.Sess. (1981).
[3] Bills have been introduced in the Louisiana legislature to eliminate non-adulterous fault as a barrier to permanent alimony. See, for example, La.H.R. 364, 8th Reg.Sess. (1982), and proposed La.Civ.Code art. 161; La.S.B. 311, 8th Reg.Sess. (1982). The legislation failed to pass.
[1] La.Civ.Code Art. 4.