hKLIEBERT, Chief Judge.
The Louisiana Supreme Court remanded this ease for reconsideration in light of Allen v. Allen, 94-1090 (La. 12-12-94) 648 So.2d 359.
*727 The issue presented is whether Jane O’Leary Manzanares, appellant, was free from the type of fault which would bar her from permanent alimony. LSA-C.C. art. 112.
The trial court, after a trial on the merits, determined appellant was not free from fault and hence denied her request for permanent alimony. On her appeal, we affirmed the trial court’s ruling. Manzanares v. Manzanares, 646 So.2d 1102 (La.App. 5th Cir.1994).
As stated in our original opinion:
Permanent alimony may only be awarded to a spouse who has not been at fault in the termination of the marriage. LSA-C.C. Art. 112; Adams v. Adams, 389 So.2d 381, 382 (La.1980). Under Article 112, a spouse seeking permanent alimony has the burden of proving freedom from fault. Batiste v. Batiste, 586 So.2d 643 (La.App. 5th Cir.1991). To be legally at fault, a spouse must be guilty of misconduct which compels a separation because the marriage is unsupportable. Brewer v. Brewer, 573 So.2d 467, 469 (La.1991). To constitute fault which will prohibit a spouse from permanent alimony, the spouse’s conduct must be not only of a serious nature but also be an independent contributory or a proximate cause of the separation. Pearce v. Pearce, 348 So.2d 75 (La.1977).
A trial court’s findings of fact relative to the issue of fault in domestic cases are entitled to great weight and will not be overturned on appeal absent manifest error. Mathews v. Mathews, 614 So.2d 1287 (La.App. 2nd Cir.1993); Nance v. Nance, 548 So.2d 87 (La.App. 5th Cir.1989).
RThe parties were married in 1964 and physically separated in 1989. Specifically, on February 3, 1989, Mr. Manzanares left the matrimonial domicile, never to return. Why appellee left his wife at that point in their marriage is the underlying question to be answered in determining whether appellant was free from legal fault.
It is undisputed that appellant traveled to Florida just prior to Thanksgiving in 1988 and returned to the family home in January, 1989. According to her testimony, she stayed in Florida longer than originally intended due to the fact that her son, who lived in Florida, got into trouble and she stayed to help him. She testified that she attempted to speak to Mr. Manzanares while she was in Florida and that he originally refused to speak to her and subsequently disconnected the telephone in the family home.
According to Mrs. Manzanares, the parties shared the same bedroom when she returned from Florida. She also testified that upon her return to the family home, her husband started going out and staying out late at night. She further testified that Mr. Manza-nares abandoned her on February 3, 1989 by leaving the family domicile and never returning. She claimed that he walked out on her and mentally abused her by refusing to speak to her. She also claimed that he couldn’t cope with her medical problems and complained constantly about the medical bills. She also claimed that Mr. Manzanares developed a relationship with another woman after he left the matrimonial domicile.
Mr. Manzanares testified that his wife informed him of her trip to Florida for the first time on the same day that she left, but did not tell him when she would return. After she left, he discovered that the telephone bill was overdue and other bills had not been paid. He had the phone disconnected due to the large overdue bill. He stated that, upon his wife’s return, they did not share the same bedroom and they argued over the family finances. He claimed that his wife would not accept the idea that he was going to handle the finances and that this disagreement led to the deterioration of their relationship.
| gMichelle Manzanares, the daughter of the parties, testified that her father gave her mother money to attend a bingo game on the very day that he left the matrimonial domicile.
In our original opinion, we deferred to the trial court’s discretion on the basis of the credibility determinations made of the witnesses. In Allen v. Allen, supra, our Supreme Court held that isolated instances of arguing, complaining, and criticizing resulting from disagreements or differences of opinion related to financial matters do not constitute legal fault for the purposes of pre- *728 eluding permanent alimony. According to Mr. Manzanares, he left his wife due to the fact that they could not agree on how to handle their financial matters. Based on our evaluation of the entire record, and considering the evidence presented in light of Allen v. Allen, supra, we conclude that the trial court’s decision finding appellant not to be free from fault was clearly in error. In our opinion, appellant carried her burden to prove that she was free from the type of fault which would bar her claim for permanent alimony.
Accordingly, we now turn to the question of the amount of permanent alimony requested by appellant. The factors to be considered in determining the entitlement and amount of alimony after divorce are: (a) the income, means, and assets of the spouses; (b) the liquidity of their assets; (c) the financial obligations of the spouses, including their earning capacity; (d) the effect of custody of the children of the marriage upon the spouse’s earning capacity; (e) the time necessary for the recipient to acquire appropriate education, training, or employment; (f) the health and age of the parties and their obligations to support or care for dependent children; and (g) any other circumstances that the court deems relevant. LSA-C.C. art. 112 A(2)
The record in this matter reveals the following facts regarding the factors to be considered in determining appellant’s entitlement and amount of permanent alimony. Although she worked earlier in the marriage, appellant had been unemployed for many years and was receiving supplemental security income of $400.00 per 14month from the Social Security Administration as well as medicare for her medical costs, due to her physical disability. Mr. Manzanares was gainfully employed and earned $29,667.00 in wages in 1992. His 1994 earnings were projected to be approximately $36,000.00. Appellant’s financial statement introduced into evidence shows her monthly expenses to be $1,885.00.
From the evidence presented, we conclude that an award of $650.00 per month as permanent alimony to appellant is appropriate in light of the factors enumerated by LSA-C.C. art. 112 A(2).
For these reasons, we reverse the trial court’s judgment and our original opinion and, accordingly, we render judgment in favor of appellant and against Mr. Manzanares, ordering him to pay to appellant the sum of $650.00 per month as permanent alimony from the date of judicial demand. Appellee is cast for all costs.

TRIAL COURT JUDGMENT AND ORIGINAL OPINION REVERSED; JUDGMENT RENDERED.