696 So.2d 68 (1997)
James Gerard SIMON
v.
Bobbye Davis, wife of James Gerard SIMON.
No. 96-CA-876.
Court of Appeal of Louisiana, Fifth Circuit.
May 14, 1997.
*69 Edith H. Morris, Bernadette R. Lee, Shawn L. Holahan, New Orleans, for Defendant/Appellant.
Robert G. Creely, Gretna, Jana E. Smith, New Orleans, for Plaintiff/Appellee.
Before Gaudin, Grisbaum and Wicker, JJ.
WICKER, Judge.
In this divorce case, the former wife appeals the trial court's judgments granting a divorce and finding the parties mutually at fault in the breakup of the marriage. We affirm.
James Simon filed for and obtained a divorce from his wife of 32 years, Bobbye Davis Simon. Subsequently there was a hearing regarding partition of community property and determination of fault for alimony purposes. The district court awarded alimony pendente lite, but found mutual fault in the breakup of the marriage, so that Mrs. *70 Simon is barred from seeking permanent alimony. Mrs. Simon appeals, challenging the trial court's granting of a divorce, its determination of mutual fault and its resolution of her request for alimony pendente lite.

VALIDITY OF DIVORCE JUDGMENT
Mrs. Simon argues the trial court erred in granting a divorce because there was no testimony by either party at the divorce hearing that they had not reconciled since their physical separation. We find no merit to that contention. The transcript shows that at the hearing on April 30, 1996, Mrs. Simon herself testified that they had separated on July 17, 1995, that they had remained separate and apart since that time, and that they had not reconciled. (R. 109.) The record establishes that the petition for divorce was filed on February 7, 1996. Accordingly, the evidence was sufficient to prove grounds for divorce under La.Civ.Code Art. 103(1), living apart for six months or more on the date the petition is filed.

ALIMONY PENDENTE LITE
The trial court set both the trial of the divorce petition and the hearing on the incidental matters, including alimony, for April 30, 1996. The trial went forward as scheduled; however, there was not enough time to complete the hearing on the fault issues in the divorce. Accordingly, trial of the alimony issues was continued.[1]
Because the evidence on entitlement to divorce was completed in the first day's hearing, the court rendered a judgment of divorce the next day, May 1, 1996. Mrs. Simon filed a timely motion for new trial of the divorce. On July 2, 1996 the trial court denied the motion for new trial and, in a separate judgment, awarded alimony pendente lite in the amount of $1,500 per month, retroactive to the date on which Mrs. Simon filed her rule for alimony (February 14, 1996).[2]
Mrs. Simon contends the trial court erred in granting a judgment of divorce before determining fault and alimony pendente lite and that the judgment of divorce should be set aside because of the court's improper severance of the main demand from the incidental demands. She argues that the court's order setting the divorce and alimony matters for trial at the same time effectively denied her alimony pendente lite, because her right to alimony pendente lite expired with rendition of the judgment of divorce. Because the marriage was terminated by the divorce judgment, she was limited to seeking permanent alimony.
We find no merit to this assignment of error.
Alimony pendente lite arises from one spouse's obligation to support the other during the marriage; it is not dependent on the merits of the suit for separation or divorce or upon the actual or prospective outcome of the suit. Cassidy v. Cassidy, 477 So.2d 84, 85 (La.1985). Thus, the right to alimony pendente lite does not terminate until a definitive judgment of divorce. Id.
In Cassidy, supra, the supreme court ruled that alimony pendente lite should continue during the pendency of an appeal until the divorce judgment becomes definitive. The court noted that divorce judgments are suspended during the appeal process (La. Code Civ.P.Art. 3942), although a judgment granting alimony cannot be suspended pending appeal (La.Code Civ.P.Art. 3943).[3]
*71 "Any appeal from a judgment of separation, divorce or annulment suspends the execution of the judgment. When an appeal is taken under Article 3942, a suspensive appeal bond is not required, despite the suspensive nature of the appeal. Rather, the procedures for a devolutive appeal are followed, under which no bond is required." Young v. Young, 413 So.2d 673, 674 (La.App. 1 Cir.1982).
In this sense, `final divorce' properly must be understood as a definitive judgment of divorce. A definitive judgment is one that has acquired the authority of the thing adjudged. C.C.P. 1842.
Before a divorce judgment becomes definitive, it can be suspensively appealed. C.C.P. 3942. * * * Since the marriage continues during an appeal of a divorce judgment, so does the obligation of care and support. If one spouse is in need during an appeal of a divorce judgment, it is the duty of the other spouse to support the needy spouse.
Cassidy v. Cassidy, 477 So.2d 84, 85 (La. 1985).
Thus, the alimony pendente lite should be calculated from February 14, 1996 to the date the divorce judgment becomes final, after the appeal of the divorce itself is completed. "[A]s long as the marriage continues, the spouses owe each other a duty of support and any appeal contesting a judgment terminating the marriage continues the marital relationship and the obligation of support." Cassidy, 477 So.2d at 86.
We recognize there is a division of opinion among the circuit courts of appeal on when alimony pendente lite ends. This circuit, however, has interpreted the Cassidy case to mean that "once a judgment of divorce becomes definitive and final the right to receive alimony pendente lite terminates because the marriage has terminated." Williams v. Williams, 541 So.2d 928, 930 (La.App. 5 Cir.1989).[4]

FAULT
In oral reasons for judgment the trial court made the following findings:
[T]he testimony reveals that theirs was more of a marriage in which there was a severe lack of communication between them for many years, and this is by their own admissions.
Their daughter never noticed that there were problems, nor did their close friend who testified, and this was a neighbor, as well, noticed [sic] that there were ever problems. The daughter never knew that they had maintained separate bedrooms at various times over the past eight or nine years, and for all practical purposes, they kept their problems to themselves.
However, there were in fact problems. As I said, there [was] a lack of communication. The testimony from the parties indicated that they never even argued. Conversations throughout the marriage, was obviously very limited and very cautious, and Mrs. Simon has testified that Mr. Simon came and went as he chose, and she never complained about it.
However, there was uncontradicted testimony from witnesses that Mrs. Simon would appear at Mr. Simon's office on more than one occasion. She would curse and berate him in the presence of his employees, leaving him somewhat embarrassed and humiliated. Although they never argued, it always takes two people to argue, but it only takes one to denigrate or humiliate the other.
There is also testimony and evidence that Mrs. Simon was basically given the responsibilities of managing the family finances. Mrs. Simon's spending habits exceeded her husband's earnings at some point, and this was further evidenced by *72 the numerous bank overdrafts and the use or misuse of fairly substantial sums that were under her control, both during and after the marriage.
I find further that there was a lack of any sexual relationship between the parties, and this also has contributed to the failure of their marriage and for this, they are both to blame.
Consequently, there has been a culmination of events that has contributed to the demise of the marriage. Although petty legal quarrels do not rise to the level of legal fault, I do believe that verbal abuse which is aimed at a person in the presence of his subordinates, on more than one occasion, can constitute rendering a marriage insupportable.
Accordingly, I find that Mrs. Simon is not free of fault, and, therefore, not entitled to permanent alimony. I find both the parties to be mutually at fault in the breakup of the marriage.
Mrs. Simon contends the trial court was clearly wrong in finding mutual fault in the dissolution of the marriage. She states that the judge completely omitted any mention of the fact that Mr. Simon abandoned the marital domicile and was involved in a sexual relationship with another woman prior to the divorce. She contends that none of the factors noted by the trial judge (lack of communication, financial problems, humiliation, and infrequent sexual relations) were sufficient to constitute legal fault on her part. She argues they constitute mere imperfection, which is present in all marriages of long duration. She contrasts this behavior with Mr. Simon's departure from the marital domicile, his refusal to return despite his wife's request, his refusal to continue in marriage counseling, and his adultery.
In response Mr. Simon asserts that his wife refused to communicate, failed to engage in normal sexual relations, verbally intimidated and humiliated him in front of his friends and employees, and overspent without regard for his financial abilities. He contends her actions made living together insupportable. As to her allegations of adultery, he states she hired a private detective to follow Mr. Simon, at a cost of over $3,000 in community funds, but never called the detective to testify at trial. Accordingly, he states, "this can only lead to the conclusion that Mrs. Simon's allegations of marital infidelity were unwarranted."
Further, Mr. Simon and two of his former employees testified that when Mrs. Simon came to the business, she would curse him in front of the employees, calling him a "nogood son-of-a-bitch" and other such terms. He stated that such incidents would bring tears to his eyes because of the humiliation. That was supported by one of the former employees. He also testified to disagreements between them over treatment of their respective extended families, as well as the disappearance of large sums of money from their bank accounts for which Mrs. Simon would not account to him.
A spouse who "has not been at fault and has not sufficient means for support" may be allowed permanent periodic alimony out of the property and earnings of the other spouse "which shall not exceed one-third of his or her income." La.Civ.Code Art. 112. Thus, a spouse seeking alimony must first prove she or he was not at fault in the breakup of the marriage and, second, that she or he has not sufficient means for support.
Legal fault consists of serious misconduct, which is a cause of the marriage's dissolution. Allen v. Allen, 94-1090 (La.12/12/94); 648 So.2d 359, 362. All spouses have faults, and a spouse need not be perfect to be free from legal fault. Brewer v. Brewer, 573 So.2d 467, 469 (La.1991). Petty quarrels between husband and wife do not rise to the level of legal fault; to be legally at fault, a spouse must be guilty of cruel treatment or excesses which compel a separation because the marriage is insupportable. Allen v. Allen, supra, at 362-363. Fault contemplates conduct or substantial acts of commission or omission by a spouse violative of his or her marital duties or responsibilities. Pearce v. Pearce, 348 So.2d 75, 77 (La.1977).
"Under Louisiana law and jurisprudence, a continued pattern of mental harassment, nagging and griping by one spouse *73 directed at the other can constitute cruel treatment; whereas mutual incompatibility, fussing and bickering cannot." Coleman v. Coleman, 541 So.2d 1003, 1005 (La.App. 3 Cir.1989). Thus, "a fractured relationship characterized by a pattern of mutual harassment and nagging" has been found sufficient to constitute mutual fault. Id.
"Spousal fussing and bickering ordinarily do not support a finding of cruel treatment. When the degree of spousal fussing and bickering, however, allows the finding of a pattern of harassment, upbraiding, nagging and griping, a determination by the trial court of cruel treatment has been found supported by the record. Each case must rest on its own facts." Guillory v. Guillory, 626 So.2d 826, 831 (La.App. 2 Cir.1993).
In the area of domestic relations, the factual findings of the trial judge are accorded very substantial weight on review. The trial judge's finding of fact on the issue of fault will not be disturbed unless manifestly erroneous. Pearce v. Pearce, supra.
Mr. Simon's statements in brief are supported by the transcript. Given the trial court's obvious conclusions as to credibility, the behavior attributed to Mrs. Simon is sufficient to constitute fault on her part.
Finally, as to Mrs. Simon's allegations regarding Mr. Simon's adultery: Post-separation adultery is fault of such magnitude that it precludes permanent alimony to the person committing it. Billingsley v. Billingsley, 618 So.2d 562, 565 (La.App. 2 Cir.1993); Roberts v. Roberts, 519 So.2d 229 (La.App. 5th Cir.1988). Mr. Simon has not contested the fault finding against him, however. Further, there is no evidence that adultery either contributed to the breakup of the marriage or occurred prior to the separation to justify Mrs. Simon's long-term enduring hostile behavior toward her husband. (Although it is undisputed that Mrs. Simon used community funds to hire a detective to follow her husband, she did not call the detective to testify at the divorce trial or the fault-determination hearing.) Instead, the evidence indicates that the adultery occurred months after the parties physically separated. Accordingly, Mrs. Simon's references to adultery are of no great legal significance in this case.
We find no manifest error in the trial court's determination of mutual fault.

DECREE
For the foregoing reasons, the judgment of the district court is affirmed. The parties are to pay their own costs for this appeal.
AFFIRMED.
GAUDIN, J., dissents.
GAUDIN, Judge, dissenting.
I respectfully dissent, being of the opinion that the legal causes of this long-term marriage's dissolution were James Simon's involvement with another woman and his abandonment of the matrimonial domicile. The record, despite Bobbye Simon's imperfections, does not support a mutual fault determination.
NOTES
[1] Subsequent hearing dates on the fault/need issues were May 1, May 2, June 18 and June 20, 1996.
[2] The alimony pendente lite award was made in the same judgment as the determination of fault for purposes of permanent alimony.
[3] Art. 3942. Appeal from judgment granting or refusing annulment or divorce

A. An appeal from a judgment granting or refusing an annulment of marriage or a divorce can be taken only within thirty days from the applicable date provided in Article 2087(A)(1)-(3).
B. Such an appeal shall suspend the execution of the judgment insofar as the judgment relates to the annulment, divorce, or any partition of community property or settlement of claims arising from the matrimonial regime. [Emphasis added.]
Art. 3943. Appeal from judgment awarding custody, visitation, or support
An appeal from a judgment awarding custody, visitation, or support of a person can be taken only within the delay provided in Article 3942. Such an appeal shall not suspend execution of the judgment insofar as the judgment relates to custody, visitation, or support.
[4] The first and second circuits have held that alimony pendente lite continues until final determination of the permanent alimony-fault question. See, e.g., Nungesser v. Nungesser, 558 So.2d 695 (La.App. 1 Cir.1990), writ denied 560 So.2d 30 (La.1990); Unkel v. Unkel, 26,650 (La.App. 2 Cir. 3/1/95); 651 So.2d 382, 386. Like the fourth circuit, however, we feel that ours is the better-reasoned view. See Lacoste v. Lacoste, 95-2122 (La.App. 4 Cir. 11/30/95); 665 So.2d 1229, 1232.