JiCOOKS, Judge.
Former husband appeals an award of permanent alimony to his ex-wife. The trial court found plaintiff proved insufficient income to offset her necessitous circumstances and that she was not voluntarily underemployed, as defendant claimed. For the following reasons, we find manifest error and reverse the trial court’s judgment awarding permanent alimony.
FACTS
Robert Glaude Jr. and Linda B. Glaude were divorced by judgment dated January 3, 1995, wherein, among other provisions, Robert was ordered to pay seven hundred and twenty-two dollars ($722.00) per month in child support. On November 14, 1996, pursuant to rules filed by-Linda for permanent alimony, an increase in child support,, restricted visitation, and income assignment, both parties stipulated neither was at fault in the breakup of the marriage and Robert’s child support obligation was increased to eight hundred and sixty-seven dollars ($867.00) monthly. Subsequently, |2on April 25, 1996, Linda filed a rule seeking permanent alimony, alleging she had insufficient income for her support.
At the time of the divorce, Linda was salaried at approximately forty thousand dollars ($40,000), working as a heavy equipment operator for Gulf States Utilities, which presently does business as Entergy. In 1995, Linda was, however, laid off from her job and has since been unemployed. In the interim, she received severance pay for the six (6) months following her termination, commencing September 2, 1995. Afterwards, Ms. Glaude received six (6) months of unemployment compensation. During 1996, she also received twelve thousand dollars six hundred seventy-two dollars and thirty-nine cents ($12,672.39) as settlement for personal injuries she sustained in an accident. These monies, together with Robert’s support payments were Linda’s sole sources of income during the period after her layoff. Presently, Linda receives no unemployment benefits and has no cheeking or savings accounts or any other assets or investments, besides her home, which she is currently paying on. In addition to Robert’s regular support payments, Linda receives a small stipend from the JTPA program to assist with her child care expenses for their youngest child. She testified when she subtracts her expenses from Robert’s child support payments, she has a negative balance exceeding fourteen hundred dollars each month. Linda is enrolled in a Job Training Partnership Act (JTPA) program, requiring her attendance at McNeese State University. The program, she testifies, is intended to help “dislocated homemakers” and demands a three or four hour daily commitment per course. Ms. Glaude stated she has two courses remaining to complete the curriculum and each course should take “somewhere like four to six weeks.” Although, she admits she has time to get a job, Linda testified, because she is enrolled in the JTPA program, any employment she could get would be limited to “twenty hours a week.” According [¡¡to Linda, she has not sought a part-time job, because “most [part-time] jobs call for late in *684 the evening” which would force her to get a baby-sitter.
The trial court, found Linda is “trying to adjust to an involuntary situation.” He awarded her three hundred sixty-six dollars and seventy-two cents ($866.72) per month in permanent alimony, to be paid by her ex-husband, pursuant to La.C.C. art. 112. Robert Glaude’s urges this ruling was erroneous and assigns the following:
1. The judge erred in not finding the appellee was voluntarily unemployed and, therefore, had the means for her support.
2. The judge erred in finding the appellant had the ability to pay alimony.
LAW and DISCUSSION
Article 112 of the Louisiana Civil Code allows for an award of permanent alimony to a spouse who “has not been at fault and has not sufficient means for support.” Zatzkis v. Zatzkis, 632 So.2d 307 (La.App. 4 Cir.1993). The legislature further provided permanent alimony “shall not exceed one-third of [the payor’s] income.” Alford v. Alford, 610 So.2d 923 (La.App. 1 Cir.1992).
Because the parties have stipulated to the “at fault” issue, agreeing neither violated them marital duties and responsibilities, our discussion begins with whether Ms. Glaude was in “necessitous circumstances,” as contemplated by the Civil Code and interpretive jurisprudence. See Veron v. Veron, 94-1351, 94-1352 (La.App. 3 Cir.1995); 657 So.2d 156. Mr. Glaude asserts because Linda has “failed to make any effort to find, secure and maintain employment,” deciding to “do nothing more than ‘calling around and stuff,’ ” she is precluded from receiving alimony from him. In brief, Robert alleges if Linda were to secure full-time employment, at the eight to nine dollar per hour range, she would be earning from “$1280 to $1440” each month, significantly reducing her present need.
We acknowledge that in determining the entitlement and amount of alimony |4after divorce, the court shall consider a number of enumerated factors, including, earning capacity. La.C.C.- art. 112(A)(2). Manzanares v. Manzanares, 94-356 (La.App. 5 Cir. 5/30/95); 656 So.2d 726. Specifically, those considerations are: (1) the income, means, and assets of the spouses; (2) the liquidity of their assets; (3) the financial obligations of the spouses, including their earning capacity; (4) the effect of custody of children of marriage upon the spouse’s earning capacity; (5) the time necessary for the recipient to acquire appropriate education, training, or employment; (6) the health and age of the parties and their obligations to support or care for dependent children; and (7) any other circumstances that the court deems relevant. (Emphasis added). See La.C.C. art. 112, subd. A(2); Manzanares, 656 So.2d 726, 728.
To assist in reviewing Linda’s claimed income and expenses, the only evidence available to us is her affidavit and the transcript of the parties’ trial testimony. Her affidavit shows Robert’s child support payments of eight hundred and sixty-seven dollars ($867) as her only income.[1] She lists a total of two thousand three hundred nineteen dollars and four cents ($2,319.04) in expenses, leaving her in need of fourteen hundred fifty-two dollars and four cents ($1452.04) each month. So far, Linda has been either meeting her bills with the help of family or falling behind on some monthly payments.
We note several problems with Linda’s evidence of her monthly income and expenses. For example, in her affidavit, she failed to reference the bi-weekly eighty-three dollar stipend she receives to assist with the care of her youngest child and did not specify the amount of assistance given by her family. On the other hand, she includes a monthly ear note payment of five hundred and eight dollars ($508), |5insurance payments of seventy dollars ($70) and gasoline costs of eighty dollars ($80) each month. Cablevision and security system payments, totaling sixty dollars ($60) each month were added, as well. *685 In Preis v. Preis, 631 So.2d 1349 (La.App. 3 Cir.1994), we held monthly total car expenses of five hundred and thirty-three dollars ($533) “out of line with the dictates of Art. 112.” It follows that Ms. Glaude’s total monthly transportation expenses of six hundred and fifty eight dollars ($658), are unreasonable and should be adjusted accordingly. Further, it is well settled that alimony payments after divorce are intended to “procure the basic necessitites of life,”, which do not include cable t.v. or security systems. Thibodeaux v. Thibodeaux, 95-671 (La.App. 5 Cir. 1/30/96); 668 So.2d 1269, unit not considered 96-0549 (La.4/19/96); 671 So.2d 930. These amounts should not have been considered by the court in determining Ms. Glaude’s entitlement to spousal support payments.
Also, her children’s educational expenses in the amount of three hundred and thirty-four dollars ($334), covering tuition, books, registration, etc., are listed on her personal expenses. Postdivoree alimony is intended to assist only with “the former spouse’s maintenance, which includes food, shelter, clothing, transportation, medical and drug expenses, utilities, household maintenance, and income tax liability generated by alimony payments.” Settle v. Settle, 25,643 (La.App. 2 Cir. 3/30/94); 635 So.2d 456, rehearing denied, writ denied 94-1340 (La. 9/16/94); 642 So.2d 194. These expenses should be addressed by a rule for increased child support and should not have been considered in determining Linda’s basic monthly needs.
Further, according to Linda’s testimony, with the exception of her housing expenses, none of her other long term debts are more than a few payments from being paid in full.[2] Postdivorce alimony is in the nature of a pension, meant to cover the |6basic necessities of life. January v. January 94-882, 94-882 (La.App. 3 Cir. 2/1/95); 649 So.2d 1133. If we affirm the trial court’s judgment,. Ms. Glaude will receive a permanent, postdivorce alimony for certain expenses which are either excessive, of a short term nature, or for which she is already receiving compensation. Robert would be forced to come to court again, six months or less from now, to obviate further payments. However, not only do we find Linda’s monthly expenses a bit unreasonable; there simply is no justification in the record for ordering Mr. Glaude to pay her alimony. To the contrary, the record provides ample evidence that Ms. Glaude is capable of significantly contributing to her own care.
Linda Glaude has not completed one job application since leaving her former job and concedes there are no diagnosed medical restrictions on her working as a heavy equipment operator again. When cross-examined on her alleged lack of effort to get a job, Linda testified as follows:
Q: You said that you have sought employment since your termination from Entergy. What places have you put in applications?
A: Well, number one, I went through Grumman, but it was like going through Sowela. It’s training. I went there and they told us like if we’d get on and stuff, you finish your training, your beginning pay you’d make like nine-eight something to nine dollars an hour. You know, like an aircraft mechanic or something.
Q: And, when was that?
A: Oh, before my unemployment started.
Q: What other places did you apply?
A: Uh, that was it.
Q: You made no other attempts to seek employment?
A: Oh, yes, I sought — I did go looking, you know, calling around and stuff, like part-time work.
Q: So, basically you haven’t completed any application for a job?
|7A: No, I hadn’t.
******
When asked about her claimed inability to continue working in the line of work in which she is experienced, Linda responded, to wit:
*686 Q: Mrs. Glaude, at the time of your lay off, you were medically able to work for Entergy, were you not?
A: Was I what?
Q: Medically able to work for Entergy?
A: Yes.
Q: Has a doctor since told you that you could not return to that kind of work?
A: No.
******
For over a year after she was discharged from Gulf States Utilities, Ms. Glaude did not complete a single job application deciding, instead, to live off of her severance pay, unemployment and child support. In January v. January, 649 So.2d 1133 (La.App. 3 Cir.1995), we reviewed a grant of permanent alimony to an ex-wife who was “thirty-eight years of age, in good health, and capable of full-time work.” In large part, because of those reasons, we found the woman was “able to provide herself with the basic necessities of life” and reversed the award. Id., at 1137. Here, Ms. Glaude was thirty-nine years of age at the time of her divorce, was (and is) in good health, and capable of full-time work. The fact that “Mrs. Glaude doubted ... that she was physically capable of continuing” in her line of work is insufficient to meet her burden of proving she is in need. (Emphasis added). See Veron, 657 So.2d 156. Although she has two young children, both of them are in school. When computing an appropriate child support award, the court mediator included child care expenses, |8which should be used to offset the children’s after-school care costs. Linda’s status as primary caretaker of the children has limited effect on her ability to earn wages sufficient to take care of her “necessities.”
Evidently, the trial court considered Linda’s decision to enroll in a training program indicative of good faith efforts to obtain employment. In Mercer v. Mercer, 95-1257 (La.App. 3 Cir. 1/24/96); 671 So.2d 937, this court held where an ex-wife was given alimony “to enable her to complete her education so as to be in a better position to jointly provide” for the couple’s minor children, such an award was justifiable. Id., at 940. The Glaude’s case is distinguishable, however, because Linda, who can earn a significant income as a heavy equipment operator would not be in better position to provide for their children doing clerical work, which is the occupation she is now being trained for. Although, in brief, she states she would “not be able to work as a heavy equipment operator now without further training and licensure,” her testimony was more to the effect that the additional licensure would be needed for a construction industry job, specifically, and she had no idea what would be required to obtain such licensing because she did not inquire.
The trial judge’s oral reasons for judgment included the following comments:
As I see the issue before me, there’s (sic) two questions, Linda’s need and Robert’s ability to pay, with the question, in the meantime, of whether or not she has withdrawn from the market herself. As the JTPA is to prepare Linda for a future employment and upgrade her for such and as alimony is always subject to change and review, the Court finds Linda is not voluntarily unemployed.
This court finds both reasons enunciated by the trial court have little to do with whether Linda is voluntarily unemployed. Upon careful review of the record, we are convinced Linda Glaude has not met her burden of proving she is in necessitous circumstances and unable to obtain, at least, part-time employment to meet her needs. Therefore, the trial court’s award of alimony is reversed. Robert Glaude’s second ^assignment of error is rendered moot.
CONCLUSION
The trial court’s award of permanent alimony is reversed, in accordance with the law discussed herein.
REVERSED.
WOODARD, J., dissents and assigns written reasons.

. According to a footnote in her affidavit "[t]he amount reflected ... is an amount awarded on November 14, 1996, and which amount Robert Glaude, Jr., is not yet paying." Linda goes on to further allege Robert's five month delinquency in making support payments, a fact verified by Robert's trial testimony.

. Linda testified her car was “about six months” from being paid in full. Also, her listed medical expense of $150 per month consisted of a $300 balance owed to the Children’s Clinic for the Glaude’s daughter, Audrey.