1 jARMSTRONG, J.,
dissents with reasons.
I respectfully dissent. Because the former husband’s testimony with respect to his former wife’s fault was corroborated by two other witnesses and, most importantly, because that testimony with respect to the former wife’s fault was not denied, or rebutted by the former wife, I agree with the former husband that the former wife necessarily did not show herself free from fault. Therefore, I would reverse the judgment of the trial court.
The former husband, Thomas Bowes, runs a timeshare hotel business. The former wife, Kay Ann Bates Bowes, worked as a manager of the hotel for a number of years. Mr. Bowes testified that, over the last several years of their marriage, Mrs. Bowes engaged in a pattern of frequent verbal and mental abuse of him and frequent and severe denigration of him in front of his hotel employees and hotel guests.
Mr. Bowes testified that Mrs. Bowes would accuse him of adulterous affairs in front of his hotel employees and hotel guests. If Mr. Bowes went to Home Depot to buy something for the hotel, Mrs. Bowes would tell people that he must |?be with a girlfriend. Mr. Bowes denied engaging in any adultery and Mrs. Bowes admitted at trial that she had no evidence of any adultery by Mr. Bowes.
Mr. Bowes also testified that Mrs. Bowes would denigrate him by saying, in front of his hotel employees and guests, that he was “raised on welfare” and that he was “white trash.” Mr. Bowes testified that Mrs. Bowes would say, in front of his hotel employees and hotel guests, that he had very bad hygiene and did not bathe, etc. He also testified that she would yell at him in public in the hotel lobby several times a month and, in so doing, would use degrading curse words and call him a “cheating son of a bitch” or even worse.
Mr. Bowes testified that he spoke to Mrs. Bowes in private and told her that he could not put up with her verbal abuse and that her verbal abuse at the hotel was undermining his authority there. He testified that he threatened her with a divorce. However, he testified that this abuse continued. He explained that these incidents of verbal abuse, particularly public verbal abuse, would occur every week or two and that this continued for several years.
Janet Frumveller, a hotel employee, testified that, during the last several years of Mr. and Mrs. Bowes’ marriage, Mrs. Bowes would make remarks once or twice a week accusing Mr. Bowes of adultery. These accusations would be made, not only in front of Ms. Frumveller, but in front of other hotel employees as well. Ms. Frum-veller also testified that she heard Mrs. Bowes say, in the presence of Mr. Bowes and his hotel employees and hotel guests, *1003 that Mr. Bowes “was from white trash projects in Wisconsin,” that his father was a drunk and his mother | ¡¡cleaned houses. She testified that Mrs. Bowes said these things in a degrading way.
Ms. Frumveller testified that she heard Mrs. Bowes say, in front of hotel employees and guests, that Mr. Bowes washed his hair only once a month, that he wore the same clothes everyday for two weeks and that he would not bathe before coming to bed. She testified that Mrs. Bowes said that she did not want to touch Mr. Bowes and that he was so dirty that it turned her off. Ms. Frumveller also testified that she saw Mr. Bowes at the hotel on a daily basis and she did not observe this alleged bad hygiene.
Ms. Frumveller testified that Mrs. Bowes would raise her voice to Mr. Bowes in the lobby every week or two and, most often, call him “asshole.” This occurred in front of hotel employees and hotel guests. Ms. Frumveller never saw Mr. Bowes do anything to deserve this verbal treatment.
Fanci Hoffman, another hotel employee, testified that she heard Mrs. Bowes accuse Mr. Bowes of adultery, that this would happen in front of hotel employees and guests, and that these accusations increased in frequency until, by the last year of the Bowes’ marriage, they occurred weekly. Mrs. Bowes told Ms. Hoffman that Mr. Bowes was buying a Lexus automobile for a girlfriend. Ms. Hoffman also testified that she heard Mrs. Bowes say, in front of hotel employees and guests, that Mr. Bowes was “white trash,” “brought up in the projects” and that his father was a drunk. She testified that she heard Ms. Bowes say, in front of hotel |4employees and guests, that Mr. Bowes washed his hair once a month and wore the same clothes everyday.
Mrs. Bowes testified at trial but she did not deny or rebut the testimony of Mr. Bowes, Ms. Frumveller or Ms. Hoffman that she had, in front of hotel employees and guests, repeatedly and for a period of several years, accused Mr. Bowes of adultery, denigrated his background, criticized his hygiene and yelled at him using curse words and obscene names. If the testimony of Mr. Bonnes, Ms. Frumveller, and Ms. Hoffman were not true, then it was incumbent upon Mrs. Bowes to present at least her own testimony to the contrary. I believe that the only reasonable factual finding that can be made based upon this evidentiary record is that Mrs. Bowes did publicly verbally abuse Mr. Bowes on frequent occasions for a period of several years. Thus, I would make such a factual finding on appeal. See, e.g., Rosell v. ESCO, 549 So.2d 840 (La.1989).
A party seeking permanent alimony has the burden of proving his or her lack of fault in causing the dissolution of the marriage. La. Civ.Code arts. 111-112; Allen v. Allen, 94-1090 (La.12/12/94), 648 So.2d 359, 361-62. Only misconduct of a serious nature, providing an independent contributory or proximate cause of the break-up, equates to legal fault. E.g., Wagner v. Wagner, 96-1420 (La.App. 4. Cir.12/18/96), 686 So.2d 946, 947, writ denied, 97-0380 (La.3/27/97), 692 So.2d 394-95, 97-0419 (La.3/27/97), 692 So.2d 399.
The precise question is whether Mrs. Bowes’ verbal abuse of Mr. Bowes, in front of his hotel employees and hotel guests is sufficient to constitute the type of | .¡“fault” that will disqualify Mrs. Bowes from receiving permanent alimony. I believe that it is. The case of Simon v. Simon, 96-876 (La.App. 5 Cir.5/14/97), 696 So.2d 68, summarizes the applicable law and is similar factually to the present case. Under the caselaw summarized in Simon, ordinary spousal fussing and bickering do not amount to “fault” to disqualify a spouse for alimony but “a continued pattern of mental harassment, nagging and griping by one spouse directed to the other” will consti *1004 tute such disqualifying fault. 696 So.2d at 72-73. I believe that the evidentiary record in the present case shows such a pattern of mental harassment by Mrs. Bowes directed at Mr. Bowes.
The Simon case is similar factually to the present case in that, in Simon, the wife would go to the husband’s place of business where “she would curse him in front of his employees, calling him ‘a no-good son-of-a bitch’ and other such names.” 696 So.2d at 72. As in the Simon case, we find the repeated instances of the wife cursing the husband and calling him obscene names, at his place of business and in front of his employees, to constitute “fault” so as to disqualify the wife from receiving permanent alimony. Additionally, in the present case the public denigrations of the husband included repeated remarks about his fidelity, background and personal hygiene.[1]
| fiI would conclude that Mrs. Bowes was at fault with respect to the dissolution of the marriage and, therefore she is disqualified from receiving permanent alimony.

. Mrs. Bowes cites the Supreme Court’s Allen decision, cited above. Allen has facts substantially different from those of the present case. There was no public denigration of the husband by the wife in Allen. Also in Allen, the wife’s accusations of adultery by the husband (which were not public) were well founded.