817 So.2d 230 (2002)
Hansa Yeshavant DESAI
v.
Yeshavant P. DESAI.
No. 01-CA-1325.
Court of Appeal of Louisiana, Fifth Circuit.
April 10, 2002.
William G. Legrand, New Orleans, LA, for Appellant.
*231 Ellen Cronin Badeaux, Metairie, LA, for Appellee.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS and WALTER J. ROTHSCHILD.
EDWARDS, Judge.
Plaintiff/Appellant, Hansa Yeshavant Desai, appeals the trial court's ruling that held that she was not free from fault in the breakup of her marriage to Yeshavant Desai. For the following reasons, the judgment of the trial court is affirmed.
The Desais were married on July 14, 1977, and ultimately established a matrimonial domicile in Jefferson Parish on June 8, 1995. On February 25, 1997, Appellee, Yeshavant P. Desai, ("Mr. Desai") filed a Petition for Divorce pursuant to Louisiana Civil Code art. 102. The judgment of divorce was granted on January 6, 1998. On September 26, 2000, Hansa Desai, ("Ms. Desai"), filed a Motion For Permanent Spousal Support, and on June 25, 2001 a trial was held to determine Ms. Desai's fault and eligibility for the support she requested. The trial court determined that mutual fault existed that led to the breakup of the Desai's marriage, and accordingly denied Ms. Desai permanent alimony. Ms. Desai timely filed this appeal.

LAW AND ANALYSIS
LSA-C.C. Art. 111 states:
In a proceeding for divorce or thereafter, the court may award interim periodic support to a party or may award final periodic support to a party free from fault prior to the filing of a proceeding to terminate the marriage, based on the needs of that party and the ability of the other party to pay, in accordance with the following Articles. (Emphasis provided).
In Simon v. Simon,[1] we noted the jurisprudential criteria that a court should use in determining legal fault for these types of cases.
Legal fault consists of serious misconduct, which is a cause of the marriage's dissolution ... Petty quarrels between husband and wife do not rise to the level of legal fault; to be legally at fault, a spouse must be guilty of cruel treatment or excesses which compel a separation because the marriage is insupportable... Fault contemplates conduct or substantial acts of commission or omission by a spouse violative of his or her marital duties or responsibilities.
Under Louisiana law and jurisprudence, a continued pattern of mental harassment, nagging and griping by one spouse directed at the other can constitute cruel treatment; whereas mutual incompatibility, fussing and bickering cannot ...
When the degree of spousal fussing and bickering, however, allows the finding of a pattern of harassment, upbraiding, nagging and griping, a determination by the trial court of cruel treatment has been found supported by the record. Each case must rest on its own facts. [Citations omitted].
The trial judge's finding of fact on the issue of fault will not be disturbed unless manifestly erroneous.[2] In the area of domestic' relations, much discretion must be vested in the trial judge and particularly in evaluating the weight of evidence that is to be resolved primarily on the basis of the credibility of *232 witnesses.[3] In this case, the trial court stated in its reasons for judgment:
With respect to the issue of fault, the Court finds that the mover is not free from fault in connection with the separation in this marriage. Whereas the Court takes notice that there was conduct of Mr. Desai which certainly was sufficient by which a separation would occur, the Court further finds that there was conduct on the part of the wife which created an atmosphere within that marriage wherein a continual living together was not supported, and that there was conduct on her part as well included among which were the arguments which were initiated and physical violence engaged in by and between both of these parties for which the Court finds were instituted by each.
In her sole assignment of error Ms. Desai contends that the trial court erred in finding her not to be free from fault in the break up of the marriage. Ms. Desai asserts that her testimony at trial established that she was a dutiful wife and that she did not want the marriage to end, and points to the fact that Yeshavant Desai is the one who left the matrimonial domicile in February of 1996.
Mr. Desai argues that his marriage to Hansa Desai was marked by a fractured relationship characterized by a pattern of mutual mental harassment, nagging, and griping sufficient to constitute mutual fault that made the marriage insupportable. In support of this contention, Mr. Desai first cites the trial testimony of his son, Amar Desai. When asked if there was anything that Ms. Desai did to cause the breakup of the marriage, Amar Desai said in part:
... [t]hey were both argumentative. One would instigate the other, the other would instigate the other, just like two little kids ...
Mr. Desai also testified at trial that Ms. Desai had made false accusations of adultery to several people, including his son, Amar. In regard to this allegation, Amar Desai testified:
Badeaux: In what way did your mother not trust your father?
Amar Desai: She felt that he was having an affair all the time ... Like she just every day, not every day, but accuse [sic] him of something new and I never witnessed or saw anything happen, I mean, just from what I heard and so really there was just, you know, no trust whatsoever.
Mr. Desai's testimony in regard to Ms. Desai's allegations of adultery was, in relevant part, as follows:
Badeaux: Approximately when was it that your wife accused you of fathering a child out of wedlock?
Mr. Desai: Starting from 1989 until almost 1995.
Badeaux: This was an ongoing accusation?
Mr. Desai: Yes ...
Badeaux: This child that you were accused of fathering out of wedlock, was the child born into wedlock by someone else?
Mr. Desai: Yeah.
Badeaux: So this was someone else's legitimate child.
Mr. Desai: Yeah.
Badeaux: Did Hansa Desai ever make this accusation to your son?

*233 Mr. Desai: Yes. In his presence, yes. Even in the presence of her mother-in-law, her mother also.
Mr. Desai further testified that Ms. Desai also made allegations that he committed adultery with a co-worker, and that her pursuit of these allegations in front of his office staff caused him difficulty and embarrassment at work.
Mr. Desai also argues that the marriage was marked by the "cruel treatment" of physical violence that made the marriage insupportable. At trial, Mr. Desai testified that Ms. Desai threw objects at him, battered a closed door to a room in which he was locked, cut a leather jacket that he owned, and cut the strings out of his tennis racket.
In response to the allegation of her physical abuse of Mr. Desai, Ms. Desai references that trial testimony of her son, Amar Desai, who stated that his mother sometimes struck his father in self defense. Amar Desai's complete response to the question of whether his mother hit his father, however, was as follows:
... [t]here were times where he was hitting her so, of course, she's going to take the defensive stand, but then there's other times where I'm guessing she lost control too.
Based upon our review of the record, we cannot say that the trial court erred in finding that Ms. Desai was not free from fault that led to the break up of the marriage. Based upon the testimony that Ms. Desai persistently accused Mr. Desai of adultery over a period of years, we find that the trial court could have ascertained a continued pattern of mental harassment that made the marriage insupportable. We further find that the testimony at trial, that Ms. Desai occasionally acted physically violent towards Mr. Desai, substantiates the trial court's finding that she helped create an atmosphere within the marriage wherein a continual living together was not supported. For the foregoing reasons, the trial court judgment is affirmed.
AFFIRMED.
NOTES
[1] 96-876 (La.App. 5 Cir. 5/14/97), 696 So.2d 68, 73.
[2] Pearce v. Pearce, 348 So.2d 75, 77 (La.1977).
[3] Hamsa v. Hamsa, 95-736 (La.App. 5 Cir. 1/17/96), 668 So.2d 1209; citing Pearce v. Pearce, supra, at 78.