701 So.2d 1378 (1997)
Annette Doucet BOURG
v.
Robert R. BOURG.
No. 96 CA 2422.
Court of Appeal of Louisiana, First Circuit.
November 7, 1997.
*1379 Jerri Smitko, Houma, for Plaintiff/Appellant Annette Doucet Bourg.
Julius P. Hebert, Jr., Houma, for Defendant/Appellee Robert R. Bourg.
Before LeBLANC and FITZSIMMONS, JJ., and CHIASSON[1], J. Pro Tem.
*1380 LeBLANC, Judge.
The ex-wife appeals a judgment decreeing her fault as the cause of the dissolution of her marriage. For the following reasons, we affirm.
The Bourgs were married in 1962 and made their home in Terrebonne Parish. They physically separated on April 5, 1994, and were divorced on June 16, 1995. Annette Bourg, appellant, sought post divorce permanent alimony from Robert Bourg, her former husband. After five days of testimony, the trial court found Mrs. Bourg's fault was the "independent, proximate cause of the break up of the marriage", effectively denying her post divorce alimony. She appeals.
A spouse seeking permanent alimony must be without fault. La. C.C. art. 112 A(1). The burden of proof is upon the claimant. Michelli v. Michelli, 93-2128 p. 13 (La. App. 1st Cir. 5/5/95); 655 So.2d 1342, 1350. Although recent decisions have considered the viability of former La. C.C. art. 138 fault grounds for purposes of alimony preclusion after 1990,[2] the Louisiana Supreme Court resolved the issue in Allen v. Allen, 94-1090 (La.12/12/94); 648 So.2d 359.
"Since the statutory law does not specify fault which would deny permanent alimony, legal fault must be determined according to the prior jurisprudential criteria." Allen v. Allen, 94-1090 at 8; 648 So.2d at 362. The jurisprudence specifies the conduct which may be considered fault. Allen v. Allen, 94-1090 at 9; 648 So.2d at 362.
Fault contemplates conduct or substantial acts of commission or omission violative of marital duties and responsibilities. See Pearce v. Pearce, 348 So.2d 75, 77 (La. 1977). To constitute fault, misconduct must not only be of a serious nature, but must also be an independent contributory or proximate cause of the separation. Pearce v. Pearce, 348 So.2d at 77; Michelli v. Michelli, 93-2128 at 13; 655 So.2d at 1350. These acts are synonymous with the fault grounds previously entitling a spouse to a separation or divorce. See Lagars v. Lagars, 491 So.2d 5, 7 (La.1986). They include adultery, conviction of a felony, habitual intemperance or excesses, cruel treatment or outrages, public defamation, abandonment, an attempt on the other's life, status as a fugitive, and intentional non-support. Former La. C.C. arts. 138 and 139; McLaughlin v. McLaughlin, 29,313, p. 3 (La.App. 2 Cir. 4/2/97); 691 So.2d 834, 836.
The finding that Mrs. Bourg was at fault is a factual determination. As with any factual finding, the trial court's findings of fact relative to the issue of fault in domestic cases are entitled to great weight and will not be overturned on appeal absent manifest error. Gitschlag v. Gitschlag, 593 So.2d 1331, 1334 (La.App. 1st Cir.1991).
In brief, Mrs. Bourg argues the trial court erred in failing to find Mr. Bourg's actions were the cause of the dissolution of the marriage. However, this argument incorrectly places the burden of proof on Mr. Bourg. It is the claimant who must prove his or her own freedom from fault. Vicknair v. Vicknair, 237 La. 1032, 1035, 112 So.2d 702, 703 (1959).
Mrs. Bourg argues the trial court erred in finding her actions constituted legal fault. Testimony by friends and family members established that during the marriage, Mrs. Bourg cursed, belittled, and used obscene names to address and refer to Mr. Bourg. Others testified to her accusations that Mr. Bourg engaged in criminal activity. Mrs. Bourg admitted to defacing her home and furniture at Christmas one year by writing an insulting name on the windows and china cabinet. This was in retaliation to her perceived slight by Mr. Bourg in his Christmas gift to her. Many witnesses testified to the hostility and open rancor directed towards Mr. Bourg by Mrs. Bourg. Others stated she ridiculed Mr. Bourg, complained of their sex life and claimed Mr. Bourg was impotent. We cannot say the trial court was clearly wrong in its finding that Mrs. Bourg's fault was an independent proximate cause of the dissolution of the marriage.
We next address Mrs. Bourg's argument that the trial court failed to find Mr. Bourg guilty of adultery. We note that even *1381 if the trial court had found sufficient proof of Mr. Bourg's adultery, Mrs. Bourg would still be required to show that she was free from fault in order to receive permanent alimony. See Wynn v. Wynn, 513 So.2d 489, 491 (La. App. 2 Cir.1987). Mr. Bourg's fault is relevant only to the extent that it would excuse or justify Mrs. Bourg's conduct. Wynn v. Wynn, 513 So.2d at 492. A wife is not deprived of permanent alimony simply because she was not totally blameless in the marital discord. Pearce v. Pearce, 348 So.2d at 77. Nor is she deprived of it by conduct which constitutes a reasonably justifiable response to the husband's initial fault. Wynn v. Wynn, 513 So.2d at 491.
At trial, Mr. Bourg denied any pre-separation adultery. Mr. Bourg's paramour testified their sexual relationship began after Mr. and Mrs. Bourg were separated. Other witnesses' testimony contradicted Mrs. Bourg's accusations of pre-separation adultery by Mr. Bourg.
The record before us attests to the troubled and turbulent later years in the marriage of Mr. and Mrs. Bourg. Frank, sometimes disquieting, testimony from numerous witnesses provided the trial court with a picture of an uneasy union, punctuated with accusations, denigration, criticism and condemnation. After hearing all of the testimony, the trial court concluded that Mrs. Bourg's fault was the proximate cause of the marriage's failure. The trial court did not find that Mrs. Bourg's acts were a justifiable response to initial fault by Mr. Bourg. We cannot conclude that the trial court was manifestly erroneous in its determination. Thus, the finding that Mrs. Bourg was at fault in causing the break up of the marriage will not be disturbed on appeal.
Mrs. Bourg also argues the trial court erred in admitting into evidence and relying on transcripts of tape recordings made during and after Mr. and Mrs. Bourg's separation and divorce. However, the record clearly indicates the trial court did not rely on the transcripts of the tape recordings. During final arguments by counsel and when giving oral reasons, the trial court stated:
BY THE COURT:
I have some recordings of Ms. Bourg calling Mr. Bourg....
* * * * * *
I have never heard such rage and such foul language come from the mouth of any individual, much less a woman.
* * * * * *
This Court finds that the allegations and testimony of Mr. Bourg ... backed up by theby me listening to the tapes....
(emphasis ours.)
Clearly, the trial court listened to and relied on the tapes themselves and did not rely on the transcriptions.
Although in her brief Mrs. Bourg includes parenthetical references to the tapes themselves, she did not object at trial to the introduction of the tapes and the trial court did not rule on the admissibility of the tapes. When the tapes and transcripts were offered into evidence by Mr. Bourg, counsel for Mrs. Bourg stated:
I'm going to object certainly to any transcription.... Certainly I have no objection to Your Honor listening to the tapes, if indeed Your Honor is confident that those are the parties, that that is Mrs. Bourg on the tape, I have no problem with that. I would certainly object to the transcription that I have never seen before....
At that time, the trial court questioned Mr. Bourg concerning the identification of the voices on the tapes and the accuracy of the transcriptions. To preserve the right to appeal the introduction of evidence, a party must make a timely objection and state the specific ground of objection. La. C.E. art. 103 A(1). Mrs. Bourg made no objections at trial to the introduction of the tapes; rather, she expressly declined to object to the use of the tapes. She may not now challenge them.
Lastly, Mrs. Bourg asserts the trial court erred in disregarding the testimony of Dr. Clarence Bergeron, her treating psychologist (or) counselor. Mrs. Bourg argues the trial court "simply overlooked Dr. Bergeron's testimony, and in doing so committed error." The trial court did not comment in his oral reasons for judgment on Dr. Bergeron's testimony; however, counsel for both parties *1382 included references to Dr. Bergeron's testimony in their arguments made to the court immediately before the court's ruling. Moreover, the trial court indicated the memorandum by counsel for Mr. Bourg, which includes repeated mention of Dr. Bergeron's testimony, would serve as written reasons.[3]
The trial judge as trier of fact, has vast discretion in determining the weight and credibility of witnesses. After listening to five days of testimony and evaluating the credibility of all of the witnesses, the trial court found Mrs. Bourg's fault the cause of the dissolution of her marriage. The trial record establishes a reasonable factual basis for the finding of the trial court and does not show that finding to be clearly wrong. At appellant's cost, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Honorable Remy Chiasson, retired, serving by special appointment of the Louisiana Supreme Court.
[2] Former La. C.C. art. 138 was vacated by Acts 1990, No. 1009, effective January 1, 1991.
[3] The record contains two memoranda submitted by Mr. Bourg. The other memorandum is more in the style of a syllabus of law, containing almost exclusively statements of law and their citation, with no references to the five days of testimony.