BETH CRADDOCK PALMISANO
v.
JOSEPH PALMISANO, III
2008 CA 1725
Court of Appeals of Louisiana, First Circuit.
May 13, 2009.
Not Designated for Publication
MARY GRACE KNAPP, CHRISTINE Y. VOELKEL, Counsel for Plaintiff-Appellant Beth Craddock Palmisano
SALLY DUNLAP FLEMING, MURIEL VAN HORN Counsel for Defendant-Appellee Joseph Palmisano, III.
Before KUHN GUDIRY AND GAIDRY, JJ.
KUHN, J.
Plaintiff-appellant, Beth Craddock Palmisano ("Ms. Craddock") and defendant-appellee, Joseph Palmisano, III ("Mr. Palmisano"), were married on August 2, 1997, and divorced by a June 2, 2005 judgment. Prior to their divorce, Ms. Craddock filed a rule for final periodic spousal support, which the trial court heard on August 27, 2007. The trial court's September 19, 2007 judgment denied Ms. Craddock's claim for support, finding she was not free from fault in the breakup of her marriage. Ms. Craddock has appealed, urging that the trial court erred in attributing her with fault that constituted a proximate cause of the divorce. Finding considerable support in the record for the trial court's judgment, we affirm.
Marriage is a legal relationship between a man and a woman that is created by civil contract. The relationship and the contract are subject to special rules prescribed by law. La. C.C. art. 86. Married persons owe each other fidelity, support, and assistance. La. C.C. art. 98.
Louisiana Civil Code article 111, addressing spousal support provides:
In a proceeding for divorce or thereafter, the court may award... final periodic support to a party who is in need of support and who is free from fault prior to the filing of a proceeding to terminate the marriage ....
Louisiana Civil Code article 112A also states, "When a spouse has not been at fault and is in need of support, based on the needs of that party and the ability of the other party to pay, that spouse may be awarded final periodic support ...."[1]
A condition for the award of final periodic support is the claimant's freedom from fault prior to the institution of an action for divorce. See La. C.C. art. Ill, Revision Comments  1997, comment (c). Ms. Craddock, as the claimant spouse, had the burden of showing that she was free from fault in the dissolution of the marriage in order to receive final periodic support. Mayes v. Mayes, 98-2228, p. 3 (La. App. 1st Cir. 11/5/99), 743 So.2d 1257, 1259. The question of fault is a factual one and a trial court's factual findings on the issue of a spouse's fault will not be disturbed on appeal unless found to be manifestly erroneous. Id.
Since the statutory law no longer specifies which type of fault would constitute grounds to deny final periodic support, legal fault must be determined according to the prior jurisprudential criteria. See Allen v. Allen, 94-1090, pp. 8-9 (La. 12/12/94), 648 So.2d 359, 362. To constitute legal fault, misconduct must not only be of a serious nature, but must also be an independent contributory or proximate cause of the separation. Adams v. Adams, 389 So.2d 381, 383 (La. 1980); Mayes, 98-2228 at p. 3, 743 So.2d at 1259. Such acts are synonymous with the fault grounds that previously entitled a spouse to a separation or divorce. Bourg v. Bourg, 96-2422, pp. 2-3 (La.App. 1st Cir. 11/7/97), 701 So.2d 1378, 1380. They include adultery, conviction of a felony, habitual intemperance or excesses, cruel treatment or outrages, public defamation, abandonment, an attempt on the other's life, status as a fugitive and intentional non-support. Former La. C.C. arts. 138 and 139 (repealed by 1990 La. Acts, No. 1009, § 2); Bourg, 96-2422 at p. 3, 701 So.2d at 1380.
In the present case, the trial court, in oral reasons denying Ms. Craddock's claim for final periodic spousal support, stated that "her drinking did contribute to the marital discord," "she ... has exhibited some jealous obsessiveness," and the evidence showed "she [had exhibited] volatile behavior on several occasions." The trial court further found that "more likely than not Mr. Palmisano was physically or emotionally abusive, too, to Ms. Craddock." Based on the applicable legal principles and the record before us, we are unable to say that the trial court's findings regarding Ms. Craddock's fault were manifestly erroneous. The record supports a finding that Ms. Craddock engaged in serious misconduct that was an independent contributory or proximate cause of the dissolution of her marriage.
Mr. Palmisano testified that he loved his wife while they were married, but her drinking ultimately "destroyed" their marriage. According to his testimony, Ms. Craddock drank heavily six nights out of the week, and most nights when he returned home from work, she was "already passed out from drinking." He explained that her drinking continued despite her physician's recommendation that she refrain from drinking after she developed serious health problems. Sometimes, she drank and then drove her automobile, and he worried about the liability that might arise from her actions. He also described that Ms. Craddock became physically abusive when she drank, and that she had pulled knives and, on one occasion, a pistol on him while she was drinking. He further explained that the biggest issue regarding her drinking was that her personality changed when she drank, and she became impossible to be with.
Mr. Palmisano's brother, David A. Palmisano, described Ms. Craddock's personality while drinking as "belligerent" and "loud." Ms. Craddock's former sister-in-law, Laura Sanders, testified that Ms. Craddock became argumentative when she drank. Ms. Sanders also testified that Ms. Craddock stated that when she drank she became a "bullet proof bitch." Leroy Keating, a friend of Mr. Palmisano for twenty to twenty-five years, testified that Ms. Craddock became quarrelsome, belligerent, cocky, and arrogant when she drank. Mr. Keating also testified that Mr. Palmisano rarely drank; he had only seen him drink two or three times during all of the years he had known him.
Mr. Palmisano described several incidents of outrageous conduct by Ms. Craddock during their marriage. He related that on one occasion while she was drinking, she exposed her breasts during his father's seventieth birthday party. David Palmisano also confirmed that Craddock had "flashed" her breast at his parents and their friends while at the party. Another incident related by Mr. Palmisano involved his wife's reaction to a woman who had borrowed a flannel shirt from him while they were at the race track. He explained that the sister of one of his employee was cold, so he allowed his employee to enter his trailer and borrow one of his flannel shirts for the sister to wear. He stated that when Ms. Craddock noticed the shirt, she "freaked," and "ripped [the shirt] off of [the woman]" while yelling at her, and she asked Mr. Palmisano whether he was "doing her on the side." He stated that the incident "ruined" their night. Mr. Palmisano also related another incident that occurred at the race track while Ms. Craddock was "loaded," wherein Ms. Craddock pushed and hit his friend, Mr. Keating, while using vulgar words. Mr. Palmisano also described an instance when Ms. Craddock got angry with one of his employees and tried to attack him with a steel pipe.
Ms. Craddock and her son, Charles Smith, denied that she drank habitually. Ms. Craddock's mother, Clarice Craddock, also testified that her daughter drank wine and beer, but that she never saw her daughter drink too much.
Ms. Craddock testified that she believed she was free from fault and had not done anything that had led to the breakup of her marriage. Ms. Craddock admitted that she had consumed alcohol during the marriage, but she denied drinking to excess. However, she admitted that she sometimes drank a whole bottle of wine, but denied that she drank that quantity every day. Although Ms. Craddock denied that her personality changed when she drank, she admitted that her drinking had precipitated quarrels "a few times" during their marriage. She also admitted that during these fights she always called Mr. Palmisano an "a**hole," and she admitted she might have also called him a "bastard" and an "SOB." Ms. Craddock admitted playing a joke on her husband after finding that he had been taping her phone conversations. The joke involved her engaging in a conversation with another man, pretending they were engaged in a sexual liason.
Ms. Craddock testified that her husband's physical abuse and his infidelity with the woman to whom he was married at the time of the hearing, Ellen Chapa, caused the breakdown of their marriage. Mr. Palmisano denied having sexual relations with Ms. Chapa during his marriage to Ms. Craddock. He testified that Ms. Chapa was dating his friend, Mr. Keating, when Ms. Craddock filed the divorce proceedings. He testified that he became involved with Ms. Chapa in December 2004.
Because domestic relations issues largely turn on the evaluations of witness credibility, much discretion is afforded to the trier of fact. As with any factual finding, a trial court's findings of fact relative to the issue of fault in domestic cases are entitled to great weight and will not be overturned on appeal absent manifest error. Gitschlag v. Gitschlag, 593 So.2d 1331, 1334 (La. App. 1st Cir. 1991). The record evidence supports the trial court's findings that Ms. Craddock's conduct rose to the level of habitual intemperance, excesses, and outrageous behavior. Thus, we conclude the record supports the trial court's implicit finding of serious misconduct by Ms. Craddock that was an independent contributory or proximate cause of the dissolution of the marriage.
In his appellate brief, Mr. Palmisano asserts that Ms. Craddock's brief is so plainly lacking in merit as to justify a judgment of contempt against her and her attorney, together with an award of attorney's fees, costs, and penalties, for filing a frivolous appeal. The recovery of damages for frivolous appeal is authorized by La. C.C.P. art. 2164 and Uniform Rules of Louisiana Courts of Appeal, Rule 2-19. Louisiana Code of Civil Procedure article 2133 specifically states, however, that an appellee "must file an answer to the appeal" if "he demands damages against the appellant." Although an answer to an appeal is the ordinary vehicle for asserting a claim for frivolous appeal damages, the jurisprudence has also recognized an independent appeal as an alternate vehicle. Jackson Natl Life Ins. Co. v. Kennedy-Fagan, 03-0054, p. 11 (La. App. 1st Cir. 2/6/04), 873 So.2d 44, 51, writ denied, 04-0600 (La. 4/23/04), 870 So.2d 307. Mr. Palmisano did not file an independent appeal or answer Ms. Craddock's appeal to assert his claim for damages. Thus, Mr. Palmisano's claims for attorney's fees, costs, and penalties for frivolous appeal are not properly before this court and are hereby denied. Id.[2] Further, we find no independent basis for an order of contempt.
For these reasons, we affirm the trial court's September 19, 2007 judgment finding that Ms. Craddock was not entitled to an award of final spousal support. Appeal costs are assessed against plaintiff-appellant, Ms. Craddock.
AFFIRMED.
NOTES
[1] Articles 111 and 112 were amended by 2006 La. Acts, No. 749, § 1, effective June 30. 2006. The legislature declared the provisions of Act 749, to be interpretative and to apply to "pending claims for final periodic support" in which trial had not commenced as of the effective date of the act. 2006 La. Acts, No. 749, § 2. Thus, these articles, as amended by Act 749, are applicable to the instant matter, since the hearing on the rule commenced well after the effective date of the 2006 amendments.
[2] Mr. Palmisano also asserts that Ms. Craddock and her attorney should be held in contempt of court and ordered to pay "'damages, penalties, costs and attorney's fees" due to an alleged violation of Uniform Rules of Louisiana Courts of Appeal, Rule 2-12.4. based on certain statements in Ms. Craddock's appellate brief that he finds objectionable. Again, because Mr. Palmisano did not file an independent appeal or an answer, we do not consider this claim for monetary damages.