*456 FREDERICKS HOMBERG WICKER, Judge.
|2In this proceeding for permanent spousal support, defendant/appellant Robert Smith timely appeals the trial court’s judgment finding that his ex-wife plain-tifRappellee Iona Smith was free from fault in the dissolution of the marriage and awarding Ms. Smith $2,000.00 per month in permanent spousal support. Mr. Smith raises the following issues: (1) Was the trial judge manifestly erroneous in finding Ms. Smith free from fault? (2) Did the trial judge err in finding Ms. Smith to be in need of support? (3) Did the trial judge abuse her discretion in setting the amount of permanent spousal support? (4) Did the trial judge abuse her discretion in refusing to grant Mr. Smith’s motion for new trial so that she could hear live testimony? For the reasons that follow, we reverse the judgment of the trial court and remand this matter for further proceedings consistent with this opinion.
FACTS AND PROCEDURAL HISTORY
Mr. and Ms. Smith were married on October 20, 1984 in Marerro, Louisiana. They separated in September, 2002. Mr. and Ms. Smith had two children during the marriage, both of whom were adults at the time of these proceedings.
These proceedings began in 2003 with Ms. Smith’s petition for divorce and spousal support. Ms. Smith originally sought an immediate divorce based on Mr. |sSmith’s alleged adultery. Several months later, however, Ms. Smith amended the petition seeking a no-fault divorce pursuant to La. C.C. art. 103.1. After the parties stipulated that they had lived apart for more than six months without reconciliation and that they each desired to be divorced, the trial court granted a judgment of divorce on April 23, 2003.
Thereafter, on August 6, 2003, Mr. Smith and Ms. Smith agreed to an interim consent judgment as to spousal support only. Under the terms of the August 6, 2003 judgment, Mr. Smith agreed to pay Ms. Smith $800.00 bimonthly in temporary spousal support, retroactive from January 24, 2003. The parties also agreed that Mr. Smith was “in arrears in the amount of $2,400.00.” The parties further agreed that Mr. Smith would pay $1,200.00 per month to Ms. Smith until all arrears were paid. The issue of permanent spousal support was not addressed in the August 6, 2003 interim consent judgment.
On March 29, 2006, Ms. Smith filed a Rule to Determine Permanent Spousal Support. Ms. Smith contended that she was not at fault for the termination of the marriage, that her husband earned upwards of $200,000.00 per year as a “general contractor,” and that she was in need of permanent spousal support due to her inability to work.
In response to Ms. Smith’s request for permanent spousal support, Mr. Smith filed an answer in which he denied that he made $200,000.00 per year and alleged that Ms. Smith was “secretly holding] two sitting jobs in addition to [receiving] her social security check for lupus.” Mr. Smith contended that several of Ms. Smith’s allegations were false, including her ongoing adultery accusations, her allegation that a construction corporation existed, and that Mr. Smith was hiding money in a safe deposit box. With regard to his income, Mr. Smith alleged that he had never earned as much at $40,000.00 per year. As to fault, Mr. Smith |4alleged, as he had in previous pleadings, that a September 26, 2002 boiling water incident was the final cause of the dissolution of the marriage and that Ms. Smith was therefore at fault. In 2003, Mr. Smith had alleged that the separation occurred when *457 Ms. Smith was taken to jail after she threw a pot of boiling water on Mr. Smith. Mr. Smith alleged that Ms. Smith was arrested after this incident and became the subject of a protective order in favor of Mr. Smith. Also, in his previous answer to the petition for divorce, Mr. Smith contended that Ms. Smith was at fault in the dissolution of the marriage because of her false and continuous accusations of adultery. In his answer, Mr. Smith denied ongoing extramarital adulterous relationships since 1996 and accused Ms. Smith of numerous falsehoods in her petition. Mr. Smith acknowledged that both he and Ms. Smith had committed adultery in the early 1990’s, but maintained that he and Ms. Smith had reconciled in 1996 and that he had not committed adultery' since that time.
On January 3, 2007, Ms. Smith was deposed. Ms. Smith was questioned extensively about the September 26, 2002 incident and her subsequent arrest. She was also questioned about her version of the events which occurred during the marriage and after the parties’ separation in 2002, Mr. Smith’s income, her earning capacity, and alleged inconsistencies and falsehoods in her earlier statements.
Both parties filed pretrial memoranda on February 12, 2007. In her pretrial memorandum, Ms. Smith first raised the issue of self-defense as to the September 26, 2002 boiling water incident. In the memorandum, Ms. Smith alleged that she threw hot water at Mr. Smith because Mr. Smith “came at Ms. Smith with a knife, cursing and yelling at her.” Furthermore, Ms. Smith alleged that “Mr. Smith did not have any injuries, and received no medical treatment as a result of the hot water.” Ms. Smith also alleged for the first time that Mr. Smith had been violent with her for years. Ms. Smith contended that the actions which resulted in her |5arrest did not amount to fault because they were a “reasonable or justifiable response to the other spouse’s provocative act.” (citing Goodnight v. Goodnight, 98-1892 (La.App. 3 Cir. 5/5/99), 735 So.2d 809, 812).
In his February 12, 2007 memorandum, Mr. Smith stated that he owned one truck, had one helper, and performed small-scale concrete pouring jobs. According to Mr. Smith, his total income never exceeded $2,000.00 per month.
Mr. Smith did not respond to Ms. Smith’s allegation that her actions on September 26, 2002 were committed in self-defense, presumably because his pretrial memorandum and Ms. Smith’s pretrial memorandum were filed on the same day. Mr. Smith denied that Ms. Smith was disabled due to lupus and that he owed Ms. Smith past due spousal support.
On February 13, 2007, the trial court continued the trial date on the Rule for Contempt and the Answer to May 14, 2007. Between February 13, 2007 and May 14, 2007, Mr. Smith neither sought to rerdepose Ms. Smith concerning her self-defense and ongoing violence claims, nor sought discovery from Ms. Smith as to the evidence she intended to produce in addition to her own testimony concerning her self-defense claim. On May 14, when the trial court again continued the trial, the parties agreed in open court to submit the matter on written memoranda. The trial court ordered that the memoranda be filed within thirty days.
Both parties filed trial memoranda on June 13, 2007. Along with her Trial Memorandum, Ms. Smith introduced into evidence various exhibits regarding Mr. Smith’s alleged ongoing verbal and physical abuse of Ms. Smith, the fact that she acted in self-defense during the September 26, 2002 boiling water incident, her disability due to lupus, her consequent inability *458 to work, and evidence of Mr. Smith’s income.
|fiIn his trial memorandum, Mr. Smith argued that Ms. Smith was not disabled, that she was capable of working, that she knowingly made factual misrepresentations to the court by claiming that Mr. Smith had created a corporation for the purpose of hiding marital assets, that he did not have annual income of $200,000.00, and that Ms. Smith was at fault in the dissolution of the marriage as a result of the September 26, 2002 scalding water incident. Mr. Smith again demanded an offset against any spousal support for the payments he made between August-September 2003 and August 2005 when he alleged Ms. Smith lived again in the home and he paid the bills. Mr. Smith failed to respond to either Ms. Smith’s allegation that he threatened her with a knife on September 26, 2002 or her allegation of ongoing violence. Moreover, Mr. Smith introduced no exhibits into evidence at that time.
On July 10, 2007, the trial court issued a Judgment and Reasons for Judgment. The trial court found that “Iona Smith is free from fault in the causes giving rise to the break up of this marriage.” The trial judge also found Ms. Smith to be “disabled due to her diagnosis of lupus” and ordered Mr. Smith to “pay permanent support to [Ms.] Smith in the amount of $2,000.00 per month.”
On July 16, 2007, Mr. Smith filed a Motion for New Trial and Motion Under La. C.C.P. art. 1917 for Specific Reasons for Judgment on Each Issue as Required by Art. 1917; Motion For Reasons and Required Analysis of Permanent Support Award as Required by La. C.C. art. 112 and Motion for New Trial to Reduce Award to Limits Provided in La. C.C. art. 112 (the “Motion for New Trial”). In the Motion for New Trial, Mr. Smith urged that a new trial be granted for the presentation of testimony of live witnesses because the Court made statements in its Judgment without basis in the evidence introduced. Mr. Smith did not, however, object to the documents which were admitted into evidence on June |713. Mr. Smith argued that the trial court erred in finding Ms. Smith to be “free from fault” in the dissolution of the marriage. Mr. Smith further contended that the “breakup of the marriage was caused by [Ms. Smith’s] throwing boiling water on Mr. Smith, which led to her arrest by the Jefferson Parish Sheriffs Department.” In his Motion for New Trial, Mr. Smith did not address the evidence introduced by Ms. Smith on June 13, 2007 regarding self-defense in the September 26, 2002 boiling water incident and ongoing violence. As to the amount of spousal support awarded, Mr. Smith argued that no evidence was produced from which the court could find that his income was sufficient to support a permanent spousal award of $2,000.00 per month. He argued that the $2,000.00 per month spousal support award exceeded one-third of his net income. Mr. Smith pointed out that the court in its judgment did not find the amount of his net income, finding only that he had the means at his disposal to pay permanent spousal support and thereafter awarding the sum $2,000.00 to Ms. Smith. Mr. Smith also argued that the trial court failed to take into account Ms. Smith’s admission that she could work and had worked three days per week as a sitter.
Mr. Smith did not object to the portion of the judgment which found that he was entitled to a reimbursement claim against the community for mortgage payments he had made, although the judgment did not mention reimbursement for Ms. Smith’s living expenses he allegedly paid between either August-September, 2003 or Novem *459 ber 2004 and August 2005. In his Motion for New Trial, Mr. Smith also sought wilt-ten reasons for the trial court’s July 10, 2007 judgment.
On July 24, 2007, Ms. Smith filed her Opposition to Defendant’s Motion for New Trial. Ms. Smith did not object to the portion of Mr. Smith’s motion in which he sought written reasons for the court’s decision. Otherwise, she argued that the court’s judgment was not contrary to the law and evidence. Ms. Smith contended |sthat the evidence she introduced on June 13, 2007 supported her claim that she acted in self-defense on September 26, 2002. Ms. Smith further contended that she proved that she reacted in response to Mr. Smith’s ongoing adulterous affairs and that she was in need of spousal support. Finally, she argued that the evidence she produced proved, without contradicting evidence, that Mr. Smith earned $7,000.00 to $8,000.00 per month post-Katrina. Ms. Smith admitted that she is capable of doing some light work such as a sitter for limited periods of time, provided her condition does not further deteriorate.
On July 30, 2007, Mr. Smith filed a Reply Brief To Opposition To Motion For Rehearing. As to the income issue, Mr. Smith argued in the reply memo that his actual income is clear from the bank records already introduced into evidence but that a new trial is needed to clarify obvious confusion. He argued that trial on briefs alone led the court into error and clearly the court needs a live trial to comply with La. C.C. art. 112’s requirement that actual income must be computed and justified.
In the Reply Brief, Mr. Smith for the first time contended that an “affidavit” executed by Ms. Smith’s sister, Deborah Jones, was erroneously admitted into evidence. Mr. Smith contended that if the court relied “at all” on the affidavit, then a new trial must be granted or the matter re-opened partially for counsel, if only by deposition, to cross-examine this witness. While Mr. Smith mentioned other affidavits introduced into evidence on June 13, 2007, he did not specifically object to those affidavits. He argued that even if the events described in the affidavits were true, the events described occurred many years earlier and that the parties thereafter reconciled. Mr. Smith did not specifically address Ms. Smith’s affidavit wherein she alleged that she threw boiling water at Mr. Smith on September 26, 2002 because Mr. Smith came at her with a knife. He argued that the September |s26, 2002 police report and Ms. Smith’s statements against interest in her deposition suffice to prove that she was at fault in the dissolution of the marriage. The September 26, 2002 police report was not introduced into evidence on June 13, 2007.
The Motion for New Trial was heard on October 4, 2007. At the hearing, both parties asked the trial court to provide additional written reasons for the July 10, 2007 judgment. The trial court agreed to the request.
On October 16, 2007, the trial court denied Mr. Smith’s Motion for New Trial. That same day, the court provided the following Reasons For Judgment:
[T]his Court finds that Ms. [Smith] is free from fault in the break-up of the marriage of Mr. Smith. This Court finds that although Ms. [Smith] did have an incident where she threw hot water at Mr. Smith, she acted “reasonably and justifiably” to protect herself from Mr. Smith’s violent and aggressive behavior.
[[Image here]]
Therefore, this Court finds [Ms. Smith] free from fault and finds her behavior to be reasonable and justifiable under the circumstances.
*460 On October 23, 2007, Mr. Smith filed a Motion for Expedited Hearing on Motion For Findings Complying with the Requirements of La. C.C. art. 112 For Appeal Purposes and For Purposes of Motion For Contempt Brought by Ms. (the “Motion for Expedited Hearing”). The motion was later heard. At the hearing, the trial court agreed to provide additional written reasons for the July 10, 2007 judgment. More specifically, the trial court agreed to explain how it concluded that Mr. Smith was capable of paying $2,000.00 monthly in permanent spousal support.
On November 28, 2007, the trial court rendered the following Reasons For Judgment on Spousal Support Rendered July 10, 2007:
The Court further finds that the evidence presented, more particularly, Exhibit O, Robert Smith Construction Invoices; Exhibit S, Robert Smith discovery responses; and Exhibit T, Robert Smith’s bank statements from Regions Bank, indicates that Robert Smith has the means to support Ms. hoSmith as his income is believed to be greater than Six Thousand Dollars per month, and that $2,000 per month payable to Ms. Smith is one-third of his income.
[[Image here]]
This Court finds that Mr. Smith’s testimony is not credible.
STANDARD OF REVIEW
A trial court’s finding of fault is a factual determination and thus is subject to the manifest error standard of review. Thibodeaux v. Thibodeaux, 95-671, p. 5 (La.App. 5 Cir. 1/30/96), 668 So.2d 1269, 1272, writ not considered, 96-0549 (La.4/19/96), 671 So.2d 930. The standard of review for determining the amount of spousal support is one of abuse of discretion. Id., 95-671 at 7, 668 So.2d at 1272. The trial court is vested with great discretion in making post divorce spousal support determinations and its judgment as to whether the spouse has insufficient means for support will not be disturbed absent a manifest abuse of discretion. Ward v. Ward, 04-803, p. 5 (La.App. 5 Cir.1/25/05), 894 So.2d 499, 502. Nevertheless, the spouse claiming permanent periodic spousal support has the burden of proving necessitous circumstances or insufficient means for his or her maintenance. Id.
“But when the Court of Appeal decides that the trial court abused its discretion [in its spousal support or child support order], it is required to assess the evidence anew from the record and render a judgment on the merits as if it were a trial court, rather than to remand the case for further proceedings below.” Hogan v. Hogan, 549 So.2d 267, 271 (La.1989); See also Mathews v. Mathews, 614 So.2d 1287 (La.App. 2 Cir.1993). Thus, Hogan mandates de novo review of the merits by the appellate court where the trial court has abused its discretion in making an award of spousal support or child support. The Hogan mandate, however, is not a “bright line” rule applicable to all circumstances. Mathews v. Mathews, 614 So.2d 1287, 1291 (La.App. 2 Cir.1993) (examining Louisiana Supreme Court jurisprudence). For example, several cases have held that a remand is required when the trial court did not make an express determination as to each spouse’s fault. See, e.g., McCarty v. McCarty, 1998-2270 (La.App. 4 Cir. 3/31/99), 729 So.2d 1146.
ISSUES
Motion for New Trial — Live Testimony
Denial of a motion for new trial is an interlocutory and non-appealable judgment. Roger v. Roger, 99-765 (La.App. 5 Cir. 1/12/00), 751 So.2d 354, 356. However, the Louisiana Supreme Court *461 has instructed the courts of appeal to consider an appeal of the denial of a motion for new trial as an appeal of the judgment on the merits when it is clear from the appellant’s brief that he intended to appeal the merits of the case. See, e.g., Punctual Abstract Co. Inc. v. U.S. Land Title, 09-91 (La.App. 5 Cir. 11/10/09) 28 So.3d 459 (citing Shultz v. Shultz, 2002-2534, p. 3 (La.App. 1 Cir. 11/7/03), 867 So.2d 745, 746-747). It is obvious from Mr. Smith’s brief that he intended to appeal the merits of this case. We will consider the appeal from the judgment on the merits pursuant to La. C.C.P. art. 2164.
Mr. Smith contends that the trial court erred in denying his Motion for New Trial to produce live testimony in this matter. Mr. Smith contends that the trial court erred in considering an affidavit introduced into evidence which “allege[d] that Ms. Smith poured scalding water on Mr. Smith ‘in self-defense’ and made this allegation for the first time in an Affidavit submitted with the trial brief.”
On February 12, 2007, Ms. Smith filed her Pre-Trial Memorandum wherein she argued for the first time that that her actions on September 26, 2002 were committed in self-defense. Mr. Smith did not respond to that claim.
| |2On May 14, 2007, the parties agreed in open court to submit the fault and permanent support trial to the court on memoranda in lieu of a trial in open court. Both Mr. and Ms. Smith were in court when counsel for Ms. Smith proposed this solution. Mr. Smith’s counsel agreed to submission of the case on memo-randa and asked for a thirty-day delay to prepare the memos. On May 14, 2007, while in open court, Mr. Smith made no mention of Ms. Smith’s claims of self-defense on September 26, 2002 and ongoing violence first raised in her February 13, 2007 Pre-Trial Memorandum. Nor did Mr. Smith ask for time to conduct discovery of these issues or to present his own deposition in response to Ms. Smith’s allegations.
On June 13, 2007, the parties simultaneously filed them Trial Memoranda. At that time, Ms. Smith introduced into evidence various exhibits. Among these were eight affidavits. These affidavits included Ms. Smith’s own affidavit in support of her allegation that Mr. Smith had been physically and verbally abusive to her for years and that on September 26, 2002 she was defending herself against a knife attack when she threw water on Mr. Smith. The other affidavits supported Ms. Smith’s allegation that Mr. Smith had abused her for years, that Mr. Smith was unfaithful to Ms. Smith, and that she is disabled from working. Additionally, Ms. Smith introduced other exhibits concerning prior incidents of violence, Mr. Smith’s income, and her disability and alleged inability to work. Mr. Smith introduced no evidence. Specifically, Mr. Smith did not introduce the September 26, 2002 police report into evidence.
The trial court rendered judgment on July 10, 2007. Between June 13 and July 10, 2007, Mr. Smith did not object to the introduction of affidavits or any other evidence Ms. Smith had introduced on June 13, 2007. Likewise, during that | ^interval, Mr. Smith did not move to supplement the trial record with his own affidavit or deposition or any other evidence.
An affidavit is generally inadmissible as hearsay, but hearsay evidence that is not objected to constitutes substantive evidence. See State v. Allen, 03-2418, p. 25 (La.6/29/05), 913 So.2d 788, 807, cert. denied,, 547 U.S. 1132, 126 S.Ct. 2023, 164 L.Ed.2d 787 (2006); Bourque v. Bouillion, 95-909, p. 5 (La.App. 3 Cir. 10/18/95), 663 So.2d 491, 494. On May 14, 2007, Mr. *462 Smith agreed to try this case on memoran-da. When he did not object to the evidence admitted by Ms. Smith, including the affidavits between their admission into evidence on June 13, 2007 and July 10, 2007, he acquiesced in the admission of affidavits and other exhibits. In order to preserve an evidentiary issue for appellate review, it is essential that the complaining party enter a contemporaneous objection to the evidence or testimony and state the reasons for the objection. The general rule is that a rule of evidence not invoked is waived, and, hence, a failure to object to evidence waives the objection to its admissibility. Matthews v. Breaux, 04-958 (La.App. 5 Cir. 2/15/05), 896 So.2d 1146, 1150.
Ms. Smith chose to introduce exhibits into evidence supporting her claims of self-defense on September 26, 2002 and ongoing violence. Mr. Smith was made aware of these claims on February 12, 2007. He chose not to respond. Mr. Smith cannot now complain either of the mode of trial or that the trial court apparently utilized the affidavits in formulating its July 10, 2007 judgment.

Freedom from Fault

Mr. Smith contends that the trial court erred by finding Ms. Smith free from fault in the dissolution of the marriage. We disagree.
Permanent spousal support may only be awarded to a spouse who has not been at fault in the termination of the marriage. La. C.C. art. 112 (“[w]hen a | i4spouse has not been at fault ... that spouse may be awarded final periodic support”); Adams v. Adams, 389 So.2d 381, 382 (La.1980). “Fault” which will preclude support contemplates conduct or substantial acts of commission or omission by spouse violative of his or her marital duties or responsibilities. Simon v. Simon, 96-876 (La.App. 5 Cir. 5/14/97), 696 So.2d 68. Under La. C.C. art. 112, a spouse seeking permanent spousal support has the burden of proving freedom from fault. Batiste v. Batiste, 586 So.2d 643 (La.App. 5 Cir.1991). To constitute fault which will prohibit a spouse from permanent support, the spouse’s conduct must be not only of a serious nature but also be an independent contributory or a proximate cause of the separation. Pearce v. Pearce, 348 So.2d 75 (La.1977).
On November 28, 2007, the trial court issued Reasons For Judgment on Spousal Support Rendered July 10, 2007 wherein it determined that “Mr. Smith’s testimony [was] not credible.” However, Mr. Smith never testified before the trial court, nor did he introduce an affidavit, deposition, or statement on his behalf.
“[I]t is well settled that a trial court’s judgment and reasons for judgment are two separate and distinct legal documents, and appeals are taken from the judgment, not the written reasons for judgment.” McCalmont v. Jefferson Parish Sheriffs Office, 99-940, p. 6 (La.App. 5 Cir. 1/12/00), 748 So.2d 1286, 1290, unit denied, 00-0679 (La.4/20/00), 760 So.2d 1160. Thus, when trial court’s reasons for judgment are flawed, but the judgment is correct, the judgment controls, since reasons for judgment set forth the basis for the court’s holding and are not binding. Premier Games, Inc. v. State, Dept. of Public Safety and Corrections, Video Gaming Division, 99-0624, pp. 7-8 (La.App. 1 Cir. 5/12/00), 761 So.2d 707, 712.
Ms. Smith filed the following evidence into the record on the issue of fault:
|1B1. An Affidavit of Plaintiff executed by Ms. Smith on June 13, 2007. In the Affidavit of Plaintiff, Ms. Smith testified that on the date she was arrested for pouring scalding water on Robert Smith, she had confronted him about another adulterous affair and he be *463 came enraged and came on her with a knife; that Mr. Smith had physically and verbally abused her throughout the course of their marriage; that Mr. Smith had tried to kill her by running her car off the road while her children were in the car.
2. An Affidavit executed by Jerry Whatley on June 13, 2007. In the Affidavit, Mr. Whatley testified that he was personally aware of Mr. Smith’s physical and verbal abuse of Mr. Smith and that he had “never observed Iona Smith physically abuse Mr. Smith.”
3. An Affidavit executed by Deborah Jones on June 13, 2007. In the Affidavit, Ms. Jones alleged that “[s]he was following in the car behind Iona Smith when she fled from Robert Smith due to abuse and infidelity ... Robert Smith tried to kill Iona by running her car off the road.”
4. An Affidavit executed by Conrad Noel on June 13, 2007. In the Affidavit, Mr. Noel states that “[h]e was riding in the vehicle with Iona Smith when ... Robert Smith tried to kill her by running her car off the road.”
5. A ci’ime report wherein Mr. Smith was accused of simple battery against Ms. Smith.
6. A Jefferson Parish Sheriffs Office crime report form. In the space reserved for “Type of Report,” someone wrote “Complaint Ref. Harassing Phone Calls.” The report does not mention Mr. Smith or Ms. Smith by name.
7. A Jefferson Parish Sheriffs Office crime report form. In the space reserved for “Type of Report/Crime,” someone wrote “Harassing Phone Calls.” The report indicates that Ms. Smith made the complaint.
8. An undated Polaroid photograph of an African-American woman. On the bottom white area of the photograph, an unidentified person wrote “Doris Brown” and “Doris? Sexy.”
9. Ms. Smith’s deposition testimony of January 3, 2007 wherein she admitted throwing scalding water on Mr. Smith on September 26, 2002 but that she didn’t know the water was scalding; testified that Mr. Smith had had many adulterous affairs throughout the course of her marriage; admitted that she lied in her petition when she stated that she was not working and that she lived with her aunt not her mother.
hfiMs. Smith admitted in her deposition that she was the subject of a six-month protective order. She gave no testimony to justify throwing the water at Mr. Smith. Ms. Smith was also questioned about the alleged corporation, the safe deposit box, and Mr. Smith’s earnings. Ms. Smith testified that she did not know if corporation papers were filed with the secretary of state and that she knew that there was currently no safe deposit box. Ms. Smith maintained that Mr. Smith had previously had a safe deposit box. Ms. Smith testified that she knew Mr. Smith earned $200,000.00 per year because his insurer had audited him and told him he needed that much insurance. She could provide no documentation on that point. She also testified that Mr. Smith bought houses for women and a car for one. Ms. Smith additionally testified that she had found money in the shed and in a wall and that this was part of her basis for alleging that Mr. Smith earns $200,000.00 per year.
Ms. Smith admitted that she had been working for Rita Ashton for years, working five hours per day for three days per week. She testified that Ms. Ashton had died just recently. She testified that she *464 was working for Ms. Ashton when she filed her petition for divorce in which she alleged that she was not capable of working. She also admitted that she was capable of working but had not been because Ms. Ashton died a month before her deposition.
We find that Ms. Smith presented sufficient evidence to prove by a preponderance of the evidence that she was free from fault in the dissolution of the marriage. We additionally find that Ms. Smith proved by a preponderance of the evidence that her September 26, 2002 acts were a “reasonable or justifiable response to the other spouse’s provocative act.” Ms. Smith additionally produced affidavits from several parties who testified on personal belief that Mr. Smith 117physically and verbally abused Ms. Smith. Mr. Smith, who introduced no evidence on June 13, 2007, failed to rebut Ms. Smith’s evidence on the issue of fault.
In addition, we note that we cannot consider the police report created after Ms. Smith allegedly threw a pot of boiling water on Mr. Smith on September 26, 2002 because Mr. Smith did not introduce the police report into the record. Evidence not properly and officially offered and introduced cannot be considered on appeal, even if the evidence is physically placed in the record. Ray Brandt Nissan v. Gurvich, 98-634 (La.App. 5th Cir.1/26/99), 726 So.2d 474, 476.
Accordingly, we find that the trial court was not manifestly erroneous in finding that Ms. Smith proved by a preponderance of evidence that she was free from fault.

Need of Support

Mr. Smith contends that the trial court erred in finding Ms. Smith to be disabled from lupus.
La. C.C. art. 112 provides, in pertinent part:
A. When a spouse has not been at fault and is in need of support, based on the needs of that party and the ability of the other party to pay, that spouse may be awarded final periodic support in accordance with Paragraph B of this Article.
[[Image here]]
C. The sum awarded under this Article shall not exceed one-third of the obli-gor’s net income.
(emphasis added)
Under La. C.C. art. 112, the trial court may award permanent spousal support to a spouse if it is determined that the spouse is not at fault and “is in need of support.”
Ms. Smith testified during her deposition that she had previously been diagnosed with lupus, an incurable chronic autoimmune disease. Ms. Smith 11 ^introduced medical records into the record indicating that she suffers from lupus, Sjogren’s syndrome, mixed connective tissue disease, polymyositis, dermatomyositis, and diffuse scleroderma. Ms. Smith further testified at her deposition that her only income at that time, other than occasional sitting jobs with elderly neighbors, derived from a monthly Social Security check. During the deposition, Ms. Smith admitted that she had previously worked as a sitter for Rita Ashton before Ms. Ashton passed away. According to Ms. Smith, she worked three days a week for Ms. Ashton. Ms. Smith admitted that she worked five hour's a day for Ms. Ashton and was paid $9.00 per hour.
Ms. Smith introduced her 2005 federal tax return into the record on June 13, 2007. The 2005 tax return indicates that Ms. Smith’s adjusted gross income for 2005 was $4,265.00, and that the entirety of Ms. Smith’s income for 2005 was “alimony received” from Mr. Smith. Ms. Smith listed her occupation as “Driver” on her 2005 federal tax return. Ms. Smith also intro *465 duced a letter from the Social Security Administration into the appellate record. The letter indicates that Ms. Smith received $809.00 from the Administration each month in 2005. Finally, Ms. Smith introduced a Monthly Income and Expense List into the record. Ms. Smith’s monthly income is listed as $809.00, and her total monthly expenses are listed as $2,769.00. On the bottom of the Monthly Income and Expense List, there is a notation which states “net amount needed $1,960.00.” Mr. Smith introduced no evidence to rebut Ms. Smith’s illnesses, limited income, or her earning capacity. Mr. Smith likewise did not challenge the Monthly Income and Expense List Ms. Smith introduced into the record.
We conclude that Ms. Smith established that she was “in need of support” under La. C.C. art. 112 after her divorce from Mr. Smith. Her only regular income was a monthly $809.00 check from the Social Security Administration. In 11S)addition, Ms. Smith admitted that she was capable of working approximately sixty hours per month as a sitter at a pay rate of $9.00 per hour. We conclude that Ms. Smith established that she is capable of earning approximately $1,849.00 per month between working as a sitter and receiving the check from the Social Security Administration.

Award,

Mr. Smith contends that the trial court erred in determining his income to be $6,000.00 per month and in ordering him to pay $2,000.00 per month in permanent spousal support. We agree.
A spousal support award cannot exceed one-third of the other spouse’s income. La. C.C. art. 112. La. C.C. art. 112(B) lists factors which the trial court must consider in determining entitlement to permanent support, including the income of the spouses, means and assets of the spouses, the liquidity of such assets, the financial obligations of the spouses, the respective earning capacities of the spouses, the time necessary for the recipient to acquire appropriate education, training, or employment, the. health and age of the parties and their obligations to support or care for dependent children, and any other relevant circumstances. La. C.C. art. 112(B).
The purpose of permanent spousal support is to provide a spouse in need with sufficient means for support, including expenses for food, clothing, shelter, transportation, medical attention, medicine, utilities, household expenses and income tax liability generated by the spousal support payments. See, e.g., Falterman v. Falterman, 98-158 (La.App. 5 Cir. 1/13/99), 726 So.2d 1023, 1026. Also included in the determination are reasonable and necessary automobile expenses. Thibodeaux v. Thibodeaux, 95-671 (La.App. 5 Cir. 1/30/96), 668 So.2d 1269. An award of permanent spousal support is never final. White v. White, 393_JajSo.2d 240, 241 (La. App. 1 Cir.1980). The modification of a support award does not require a heightened burden of substantial change of circumstances, rather, it requires only a showing of a change of circumstances as provided in La. C.C. art. 142 and La. R.S. 9:311. Stogner v. Stogner, 98-3044 (La.7/7/99), 739 So.2d 762, 765.
In its July 10, 2007 Judgment and Reasons for Judgment, the trial court ordered Mr. Smith to “pay permanent support to [Ms.] Smith in the amount of $2,000.00 per month.” In its November 28, 2007 Reasons For Judgment on Spousal Support Rendered July 10, 2007, the trial court noted that Mr. Smith’s “income is believed to be greater than Six Thousand Dollars per month.” However, the trial court never addressed the amount of support Ms. Smith needed, nor did it make a determination as to the earning capacity of Ms. *466 Smith as required by La. C.C. art. 112. The trial court additionally failed to consider Ms. Smith’s current state of disability relative to her lupus diagnosis and her ability to work part-time as a sitter. Furthermore, the evidence relevant to Mr. Smith’s income simply does not support the trial court’s finding that he earned $6,000.00 per month.
Ms. Smith introduced Mr. Smith’s corporate bank statements into the record. The earliest bank statement in the record was for the period ending on January 31, 2006 and the last bank statement in the record was for the period ending on March 30, 2007. Thus, the bank statements in the record cover a total period of fifteen months. The bank statements include cancelled checks that Mr. Smith drew to obtain supplies for his concrete pouring business and to pay for his cellular telephone service. The bank statements also indicate when and in what amounts Mr. Smith deposited money into the bank account. Over a period of fifteen months, Mr. Smith deposited $35,519.10 into the bank account and spent |2i $14,584.20 in construction materials and cellular telephone expenses. Thus, Mr. Smith had $20,934.90 in income during that fifteen-month period, whieh equates to $1,395.66 in monthly income.
Ms. Smith also introduced several invoices into the record. The invoices describe concrete pouring work done by Mr. Smith in 1991, 1995, and 1998. The invoices also describe how much Mr. Smith was paid for each concrete pouring job. While the concrete pouring work done by Mr. Smith in those years appears to be commensurate with Mr. Smith’s current concrete work, we find that these invoices are too old to be considered in a computation of Mr. Smith’s current income. There is no support in the record for the trial court’s belief that Mr. Smith’s “income is ... greater than Six Thousand Dollars per month.”
Accordingly, we find that trial court abused its discretion in setting the amount of support. As previously mentioned, we have determined that Mr. Smith’s monthly income is $1,395.66. The trial court could therefore not have awarded Ms. Smith more than $465.22 in permanent spousal support. We agree that Ms. Smith proved that she was free from fault in the dissolution of the marriage, that Ms. Smith is in need of support, and that the trial court did not err in not granting the Motion for New Trial to permit testimony. Thus, we will reverse the judgment of the trial court and remand this matter for the purpose of recalculating Mr. Smith’s spousal support obligation in a manner consistent with this opinion.
CONCLUSION
Accordingly, the judgment of the trial court is reversed. This matter is remanded for recalculation of Mr. Smith’s permanent spousal support obligation. Costs of this appeal are taxed equally to Ms. Smith and Mr. Smith.

REVERSED; REMANDED.

DUFRESNE, J., dissents.
McMANUS, J., concurs in part and dissents in part.