FREDERICKA HOMBERG WICKER, Judge.
lain this divorce action, appellant, Todd Matthews, complains of the trial court’s judgment finding appellee, Dawn Rogers Matthews, free from fault in the dissolution of their marriage and awarding her final periodic spousal support. For the reasons fully discussed herein, we affirm the trial court’s judgment.

Factual and Procedural History

Todd Anthony Matthews and Dawn Rogers ■ Matthews (hereinafter “Dawn Rogers”) were married on January 24, 1987. During their marriage, the couple had two children, both of whom were of the age of majority at all times pertinent to these proceedings. On September 19, 2014, Mr.' Matthews filed a “Petition for Divorce Under Loúisiana Civil Code Article 102 Without Minor Children.” On September 26, 2014, Ms. Rogers filed an “Answer and Rule for Incidental Matters,” wherein she alleged that she was in necessitous circumstances and requested' that the court award her interim spousal support. • Ms. Rogers’ Answer and Rule for Incidental Matters also alleged that she was free from fault in the dissolution of the marriage and requested an award of final. periodic spousal support after the court granted the parties a judgment of divorce. On October 29, 2014, the parties attended a Hearing Officer Conference on the incidental matters raised within Ms. Rogers’ Answer and Rule, At the hearing, both parties submitted . “Financial Statements” detailing their respective financial situations. |sThe hearing officer prdered Mr. Matthews to pay Ms. Rogers interim spousal support in the amount of $2,900,00 per month.
In response to Ms. Rogers’ request for final spousal support, Mr. Matthews filed a “Motion to Set Fault for Trial” on March 2, 2015, and on March 20, 2015, Mr. Matthews filed a “Supplemental and Amending Motion to Set Fault for Trial,” wherein he alleged that Ms. Rogers was at fault in the dissolution of the marriage and therefore ineligible to receive final periodic spousal support. On April 3S 2015, Mr. Matthews filed a “Rule , for Drug Testing,” alleging that Ms. Rogers’ ,use of illegal drugs during the marriage was a primary cause for the dissolution of the marriage. On May *176 11, 2015, Mr. Matthews filed a “Rule to Show Cause Why Divorce Should Not Be Granted.” On May 12, 2015, the trial court held a hearing on all of Mr. Matthews’ motions. At the hearing, the trial court granted Mr. Matthews’ Petition for Divorce and granted Ms. Rogers the right to resume using her maiden name. The trial court took the issues of fault and final spousal support under advisement, and thereafter signed a judgment on June 3, 2015, decreeing Ms. Rogers free from fault in the dissolution of the marriage, ordering Mr. Matthews to pay final spousal support in the amount of $1,994.00 per month to Ms. Rogers, and denying a motion for costs and attorney’s fees, pursuant to La. C.C.P. art. 1472, made by Mr. Matthews’ counsel in open court.
At the May 12, 2015 hearing, several witnesses testified to Ms. Rogers’ marijuana use throughout the marriage. These same witnesses also testified to Mr. Matthews’ knowledge of Ms. Rogers’ marijuana consumption throughout the marriage and the lack of any objection by Mr. Matthews to her use of marijuana. In their testimony, these witnesses also noted that they could not recall hearing complaints from Mr. Matthews that Ms. Rogers failed in any of her marital duties.
pThe hearing also produced testimony regarding the parties’ sexual activity together in the months prior to their separation. The parties disputed the frequency of sexual intimacy and the reasons for any alleged refusal by Ms. Rogers to engage in sexual activity. The parties and witnesses further testified that during the year prior to Mr. Matthews filing his petition for divorce, Ms. Rogers was in poor health and underwent multiple surgeries, which was another cause for the diminished sexual activity. The examination regarding the parties’ intimacy also elicited testimony regarding Mr. Matthews’ relationship with another woman, Wendy Barrios, which began prior to the couple separating and continued at the time of the hearing.
During the hearing, Mr. Matthews’ counsel examined Ms. Rogers with regard to her denial of a request for admission asking Ms. Rogers to admit or deny whether she had used illegal or unpres-cribed drugs during the marriage. Ms. Rogers’ testimony established that, though she initially denied this request, prior to the hearing she amended her answer to admit to the request but object to its relevancy. During this portion of the hearing, counsel for Mr. Matthews introduced multiple subpoenas that were apparently related to proving the denied request for admission to which Ms. Rogers subsequently admitted.
Finally, both parties introduced evidence regarding their respective financial situations, including tax returns, paystubs, W-2s, and checks paid to Ms, Rogers. The trial court, in its written reasons for judgment, stated that, in awarding final spousal support, it relied on the financial statements filed by both parties in connection with the October 29, 2014 hearing regarding Ms. Rogers’ Rule for Incidental matters.
|6On June 8, 2015, Mr. Matthews filed a timely motion for devolutive appeal, which was granted by the trial court on June 15, 2015. Mr. Matthews’ appeal follows.

Discussion and Analysis

Standard of Review

A trial court’s finding of fault is a factual determination and thus is subject to the manifest error standard of review. Smith v. Smith, 08-575 (La.App. 5 Cir. 1/12/10), 31 So.3d 453, 460. The standard of review for determining the amount of spousal support is abuse of discretion. Id. The trial court is vested with great discretion in making post-divorce spousal sup *177 port determinations and its judgment as to whether the' spouse has insufficient means for support will not be disturbed absent a manifest abuse of discretion. Ward v. Ward, 04-803 (La.App. 5 Cir. 1/25/05), 894 So.2d 499, 502. Nevertheless, the spouse claiming permanent periodic spousal support has the burden of proving necessitous circumstances or insufficient means for his or her maintenance. Id.

Freedom from Fault

In his first assignment of error, Mr. Matthews argues that the trial court erred in awarding final periodic spousal support to Ms. Rogers, because Ms. Rogers failed to prove that she was free from fault prior to the filing of the petition for divorce. Mr. Matthews argues that Ms. Rogers’ testimony that she smoked marijuana on a daily basis constitutes evidence of habitual intemperance or excess, which is fault precluding an award of final periodic spousal support in her favor. Mr. Matthews asserts that, in awarding final periodic spousal support in favor of Ms. Rogers, the trial court erroneously relied on a finding that Mr. Matthews was at fault in the dissolution of the marriage, rather'than a finding that Ms. Rogers was free from fault, as required by La. C.C. arts. Ill and 112. As evidence of the trial |r,court’s error, Mr. Matthews cites the trial court’s written reasons for judgment, wherein the trial court opined that it “[was] more persuaded that Mr. Matthews’ budding relationship and vision of a future with Wendy Barrios was the impetus for his departure from the matrimonial domicile.”
Permanent spousal support may only be awarded to a spouse who has not been at fault in the termination of the marriage. La. C.C. art. 112 (“[w]hen a spouse hás not been at fault ... that spouse may be awarded final periodic support”); Adams v. Adams, 389 So.2d 381, 382 (La.1980); Smith, 31 So.3d at 462. Under La. C.C. art. 112, a spouse seeking permanent spousal support has the burden of proving freedom from fault. Batiste v. Batiste, 586 So.2d 643 (La.App. 5 Cir.1991). Fault which will preclude support contemplates conduct or substantial acts of commission or omission by a spouse viola-tive of his or her marital duties or responsibilities. Evans v. Evans, 04-215 (La.App. 5 Cir. 7/27/04), 880 So.2d 87, 89, writ denied, 04-2191 (La.11/19/04), 888 So.2d 200. Spouses seeking support need not be perfect to. be free from legal fault; rather, to constitute fault which will prohibit a spouse from permanent support, the spouse’s conduct must be not only of a serious nature but must also be an independent contributory or a proximate cause of the separation. Pearce v. Pearce, 348 So.2d 75 (La.1977); Smith, 31 So.3d at 462.
The habitual intemperance or ex-cessiveness of a spouse may constitute fault precluding a final spousal support award to that spouse.[1] Though we have traditionally defined “habitual intemperance or excessiveness” in relation to a 1 ^spouse’s alcohol consumption, there is *178 Louisiana jurisprudence affirming a trial court’s finding of fault based, in part, on a spouse’s marijuana use. See, e.g., Smith v. Smith, 528 So.2d 1055 (La.App. 5 Cir.1988) (finding that a husband’s frequent alcohol intoxication constituted “habitual intemperance” necessary to support a fault-based judgment of separation from bed and board); See also McLaughlin v. McLaughlin, 29,313 (La.App. 2 Cir. 4/2/97), 691 So.2d 834 (“We find the trial court’s, conclusions that the basic cause of the separation was Mr. McLaughlin’s recreational use of marijuana, and that Mrs. McLaughlin was free from fault, were not manifestly erroneous”). In. the context of alcohol abuse, we have defined habitual intemperance as “that degree of intemperance from the use of intoxicating liquor which disqualifies the person a great portion of the time from properly attending to business, or which would reasonably inflict a course of great mental anguish upon an innocent party.” Smith, 528 So.2d at 1057 (citing Black’s Law Dictionary 727 (Rev. 5th ed. 1979)). Applying this same definition in the analogous context of marijuana consumption, the jurisprudence, is clear that the consumption must be to such an extent that it substantially interfferds with the spouse’s marital duties or inflicts great mental anguish upon the other spouse.
Prior to, and during, the hearing, on Mr. Matthews’ Motion to Set Fault for Trial, Ms. Rogers admitted to smoking marijuana on a daily basis to increase her appetite and counteract her anorexia.. Mr. Matthews testified that he was aware of Ms. Rogers’ marijuana consumption prior to their marriage and that he was aware that Ms.; Rogers continued to smoke marijuana throughout the entirety of then- marriage. Though Mr. Matthews testified that he voiced concerns to Ms. Rogers about her marijuana use, he also testified that he never voiced his concerns to anyone other than Ms. Rogers. • Ms. Rogers disputed that claim, and testified that she never heard any complaints from Mr. Matthews regarding her marijuana use. |8Roy Rogers, Ms. Rogers’ father and the husband of Mr. Matthews’ mother, testified that he had never heard any. complaints from Mr. Matthews about .Ms, Rogers’ marijuana use, nor was he aware that Ms. Rogers smoked marijuana before the commencement of these proceedings.
Moreover, Mr. Matthews admitted that Ms. Rogers performed all of the tasks typically expected of a homemaker, including cleaning the family home, washing clothes, cooking for the family, helping the couple’s two children with their homework, and bringing the children to appointments. Mr. Matthews testified that he never disposed of Ms. Rogers’ marijuana, never monitored Ms. Rogers’ activity with the children, and never filed for divorce prior to the filing of the instant proceeding. Other than Mr. Matthews, the only witness who noted Mr. Matthews’ displeasure with Ms. Rogers’ marijuana habit was her sister, Nora Dalgo, who testified that she could tell Mr. Matthews did nqt approve of Ms. Rogers’ marijuana use because “he would walk away from it” and she could tell he was not happy with Ms. Rogers because of “the way he walked away.”
. Regarding the couple’s sexual intimacy, Mr. Matthews testified that during the six month period prior to their separation, the instances , of sexual intercourse between the couple diminished. Mr. Matthews also admitted that during this time Ms. Rogers was recovering from two surgeries and that during this period he began communicating online with another woman, Wendy Barrios, with whom he eventually began a sexual relationship and with whom he co-habitated at the time of the hearing. During examination related to Wendy Barrios, Mr. Matthews claimed that, though he *179 communicated online with Ms. Barrios pri- or to the couple’s separation, he never met her in person until April 22, the same day-on which he moved into her home. Ms. Rogers testified that, the only times she denied Mr. Matthews’ sexual advances were when he was too intoxicated, which she testified 19were frequent during the last three years of their marriage. Again, Nora Dalgo provided some corroboration for Mr. Matthews’ claim, testifying that Ms. Rogers told her that in the year before their separation the couple was not having sex. However, Ms. Dalgo also testified that Ms. Rogers complained to her about Mr. Matthews’frequent alcohol'intoxication!
In its written reasons for judgment, the trial court first noted that Ms. Rogers was credible and sincere, becoming visibly emotional during her testimony, While Mr. Matthews seémed defensive and evasive during portions of his testimony and that, despite his claim that he moved into the home of Wendy Barrios without first meeting her and did not begin a sexual relationship with her until after filing his petition, he failed to call Ms. Barrios to testify to those facts. The trial court found that there" was no dispute that Ms. Rogers smoked marijuana daily to increase her appetite, but that all of the testimony established that she was a dutiful wife and mother and that few people were even aware of Ms. Rogers’ marijuana use until after the couple’s separation. Accordingly, the trial court found that “Ms. [Rogers] has met her burden and is free from fault,” and opined that the more likely reason for the dissolution of the marriage was Mr. Matthews’ relationship with Wendy Barrios.
In the area of domestic relations, much discretion must be vested in the trial judge and particularly in evaluating the weight of evidence which is to be resolved primarily on the basis of the credibility of witnesses. McKenna v. McKenna, 09-295 (La.App. 5 Cir. 10/27/09), 27 So.3d 923, 926. The. trial judge having observed the demeanor of the witnesses is in the better position.to rule on then- credibility. Id.
Though Ms. Rogers admitted to using marijuana frequently throughout the entirety of the marriage and refusing sexual intercourse with Mr. Matthews at 11fltimes when he was intoxicated, Mr. Matthews produced little evidence to lend credibility to his claim that these issues caused the dissolution of the marriage. Aside from Mr. Matthews’ own testimony, the only corroboration for his claims came from the testimony of Nora Dalgo, who seemed confused several times throughout the proceedings and offered little factual support for her conclusions. The trial court found Ms. Rogers to be a credible witness who,, was sincere in her testimony and Mr. Matthews to be defensive and evasive during his testimony. We find no manifest error in those determinations.
We do not opine, by way of this decision, on the propriety of marijuana use, nor does our decision reject a spouse’s marijuana consumption as a basis for a finding of marital fault that might preclude an award of final periodic spousal support. However, we find no error in the trial court’s determination that Ms. Rogers’ marijuána consumption was not the proximate cause for the dissolution of the marriage. The testimony elicited at trial established that Ms. Rogers fulfilled her marital duties as a wife and mother, regardless of her marijuana consumption, and Mr. Matthews offered no evidence to the. contrary. Moreover, Ms. Rogers frequently .used marijuana ( before and throughout the entirety of the couple’s marriage, and.Mr. Matthews offered little evidence that he voiced any objection to it until Ms. Rogers sought,spousal support. *180 Therefore, we find no error in the trial court’s award of final periodic spousal support in favor of Ms. Rogers.
Accordingly, we find this assignment of error lacks merit.

Attorney’s Fees and Costs

In his second assignment of error, Mr. Matthews argues that the trial court erred in denying his motion for expenses and attorney’s fees incurred in proving a matter denied in a request for admission, pursuant to La. C.C.P. art. 1472. The record shows that Mr. Matthews propounded requests for admission on Ms. InRogers, dated February 4, 2015. One of these requests read: “Please admit or deny that you used illegal drugs or drugs that were not prescribed' to you during your marriage to Todd Anthony Matthews.” Ms. Rogers’ original response, dated February 23, 2015, denied this request for admission. However, on May 10, 2015, Ms. Rogers amended her response to this particular request to read: “Objection. Relevancy. However, Respondent does admit to this request. Respondent further asserts that an affirmative response does not constitute marital fault. Nor does an affirmative response constitute the cause and/or the proximate cause of the breakdown of the marriage of these parties.” Accordingly, Mr. Matthews argues that the trial court abused its discretion in denying his motion for expenses and attorney’s fees incurred in proving the truth of the matter.
La, C.C.P. art. 1472 provides:
If a party fails to admit the genuineness of any document or the truth of any matter as requested under Article 1466, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney’s fees. The court shall make the order unless it finds that the request was held objectionable pursuant to Article 1467, dr the admission sought was of no substantial importance, or the party failing to admit had reasonable ground to believe that he might prevail on the matter, or there was other good reason for the failure to admit.
Given the broad exceptions provided in Article 1472, the trial court has wide discretion in determining whether to award attorney’s fees. Brodtmann v. Duke, 98-1518 (La.App. 4 Cir. 3/21/01), 803 So.2d 41, 45. In Brodtmann, the Fourth Circuit provided the following prudent inquiry in determining whether to award attorney’s fees and expenses:
[t]he imposition of these sanctions must be carefully weighed against the recognition of the ultimate purposes of the adversarial system in the law. The purpose of the discovery process is not to force the opposing party to. admit to the contested facts that are at the heart of the ultimate dispute. .Rather, the central purpose of the discovery 112rules is to require the admission of facts which ought not to be disputed at trial, so as to eliminate the time, trouble and expenses of proving facts that are undisputed.

Id.

Though Ms. Rogers initially denied Mr. Matthews’ request for admission, prior to the hearing she amended her response, objecting to the relevancy of the admission but admitting to using illegal drugs during the marriage. ' Likewise, at the hearing, Ms. Rogers freely admitted to using marijuana on a daily basis throughout the marriage. Thus, Mr. Matthews was not required to prove the truth of the matter sought by his request for admission, as required for an award of expenses under *181 La. C.C.P. art. 1472. Moreover, the trial court found that Ms. Rogers’ marijuana use did not constitute fault precluding her from final periodic spousal support. Therefore the trial court could have reasonably concluded that the matter sought in Mr. Matthews’ request for admission was of no substantial importance or that the matter was not relevant to the proceedings and thus Ms. Rogers had good reason for her failure to admit, both of which are grounds for denial of a motion for expenses under La. C.C.P. art. 1472. Therefore, we do not find that the trial court abused its discretion in denying Mr. Matthews’ request for expenses and attorney’s fees.
Accordingly, we find this assignment of error lacks merit.

The Amount of Spousal Support

In his third assignment of error, Mr. Matthews argues that the trial court erred in calculating the amount of final periodic spousal support awarded to Ms. Rogers. Mr. Matthews asserts that the trial court incorrectly relied on a single paystub introduced at the hearing in its calculation of the final spousal support award amount. Mr. Matthews argues that this was an error, because that paystub contained a bonus, which may or may not recur annually, and thus the award is not | reflective of Mr. Matthews’ actual annual income. Mr. Matthews also argues that the trial court’s award failed to account for his and Ms. Rogers’ two adult children, who reside with Ms. Rogers and thus should be required to contribute to her household expenses.
Once freedom from fault is established, the basic tests for the amount of spousal support are the needs of that spouse and the ability of the other spouse to pay. Dufresne v. Dufresne, 10-963 (La.App. 5 Cir. 05/10/11), 65 So.3d 749, 761-62 (citing La. C.C. arts. 111, 112). The award for final periodic spousal support is governed by La. C.C. art. 112, which requires the court to consider all relevant factors. Id. at 762. Final periodic support is awarded to a former spouse in need and is limited to an amount sufficient for maintenance as opposed to a continuation of an accustomed style of living. Id. (citing Mizell v. Mizell, 37,004 (La.App. 2 Cir. 3/7/03), 839 So.2d 1222, writ denied, 06-2884 (La.3/9/07), 949 So.2d 440). Maintenance includes food, shelter, clothing, transportation, medical and drug expenses, utilities, household necessities and income tax liability generated by alimony payments. Mizell, 839 So.2d at 1229 (citations omitted). Further, under La. C.C. art. 112(C), the amount of final periodic spousal support shall not exceed one-third of the paying spouse’s net income. Faucheux v. Faucheux, 11-939 (La.App. 5 Cir. 03/27/12), 91 So.3d 1119, 1122.
The trial court is vested with great discretion in determining awards of spousal support, and these determinations will not be disturbed absent a clear abuse of that discretion. Id. (citing Noto v. Noto, 09-1100 (La.App. 5 Cir. 5/11/10), 41 So.3d 1175, 1181).
In her written reasons for judgment, the trial judge explained the method she employed to calculate the final spousal support award amount, stating:
luln determining the appropriate spousal support award, the Court must weigh Ms. [Rogers’] need against Mr. Matthews’ ability to pay. Mr. Matthews’ financial statement filed on October 29, 2014 provides for a monthly gross income of $7,575.26, less federal taxes of $1,397.73 and $194.35 in state taxes, resulting in an income of $5,983.18. Ms. [Rogers]’ monthly household, auto, food, and medical expenses equal approximately $3,201.19, an amount in excess of *182 one-third - Mr. Matthews’ net income. Ms. [Rogers’] income, if any, from clean-, ing houses seems nominal at best, and .was never reported as income during the marriage. Moreover, during their 27- years of marriage, Ms. [Rogers] worked’.mostly as a. homemaker. Recently, - Ms. [Rogers] has experienced health difficulties impacting her daily ■functioning;. As such, the Court finds Ms. [Rogers] is in need of. support and awards her $1994.00 per month in permanent spousal support.. .
■ Contrary to Mr. Matthews’ argument, the record shows that the trial court’s calculation 'of the final spousal support award did not rely on the paystub of which he complains; rather, the trial court based its calculation on the financial statement filed by Mb: Matthews in the trial court on October 29, 2014. This financial statement exhaustively listed Mr. Matthews’ income, taxes, expenses, assets, and liabilities, and Mr. Matthews certified that the statement “indicátes my current financial situation to the best of my knowledge, information, and belief.”
Ms. Rogers introduced a “Monthly Income and Expense List” wherein her monthly maintenance expenses totaled $4,198,19. Ms. Rogers has no income and has been a homemaker throughout the entirety of -the marriage prior to the divorce. Therefore, our review of the record indicates that Ms. Rogers sufficiently proved her need for the amount of support awarded to her- Moreover, the amount of the spousal support award does not exceed one-third of Mr. Matthews’ net income as reported in the financial statement.
■Finally, Mr. Matthews argues that his and Ms. Rogers’ adult children reside with Ms. Rogers in the former family home and should be required to contribute to the household expenses. However, the record is devoid of any evidence regarding | 15the children’s contributions, or lack thereof, to the household expenses. Therefore, we cannot say that the trial court erred in failing to take that issue into account.
Accordingly, we find no merit in this assignment of error.

Conclusion

For the foregoing reasons, the judgment is affirmed.

AFFIRMED

. Prior to repeal of La. C.C. art, 138, fault, for purposes of final periodic spousal support, was determined by analogy to the grounds for separation from bed and board enumerated in La. C.C. art. 138, one of which was habitual intemperance or excessiveness. Allen v. Allen, 94-1090 (La.12/12/94), 648 So.2d 359, 362. After repeal of La. C.C. art. 138, the Louisiana Supreme Court held that prior jurisprudential interpretation of that article still specifies the conduct which may be considered legal fault in the context of final periodic spousal support. Id. Accordingly, habitual intemperance or excessiveness, as defined by jurisprudential interpretation of La; C.C. art. 138, remains a viable ground to preclude an award of final periodic spousal support to a spouse at fault. See Lagars v. Lagars, 491 So.2d 5 (La.1986).